## S08A0695. MARTINEZ v. THE STATE.

(663 SE2d 675)

HINES, Justice.

Alberto Martinez appeals the denial of his amended motion for new trial following his convictions for malice murder, aggravated assault, possession of a knife during the commission of a crime, and concealing the death of another person in connection with the fatal stabbing of Richard Davis. Martinez challenges the admission of certain hearsay testimony, the restriction of cross-examination of a State's witness, and the effectiveness of trial counsel. Finding the challenges to be without merit, we affirm.[1]

The evidence viewed in favor of the verdicts is set forth in this Court's earlier opinion in *Navarrete v. State*, 283 Ga. 156 (656 SE2d 814) (2008), which affirmed co-defendant Navarrete's convictions: Martinez, Navarrete, Burgoyne, Woodcoff, and the victim, Davis, served together as infantrymen in the United States Army; the crimes occurred shortly after the five men returned to Fort Benning, Georgia, from a six-month deployment to Iraq and Kuwait; on the evening of July 12, 2003, Martinez drove Navarrete, Burgoyne, Woodcoff, and Davis to a Hooters restaurant to celebrate their homecoming; Martinez showed the others a new knife which he had in the console of his car; the men spent the next few hours at Hooters eating dinner and drinking several pitchers of beer; then Martinez

---

[1] The crimes occurred on July 12, 2003. On February 17, 2004, a Muscogee County grand jury returned an indictment against Martinez, Jacob Burgoyne, and Mario Navarrete, charging them with malice murder, felony murder while in the commission of aggravated assault, aggravated assault, possession of a knife during the commission of a crime, armed robbery, and concealing the death of another person; in this same indictment, a fourth man, Douglas Woodcoff, was charged solely with the offense of concealing the death of another person. Martinez and Navarrete were tried jointly before a jury January 23-27, 2006; both Burgoyne and Woodcoff entered guilty pleas and testified for the State. The jury found Martinez guilty of all charges, save the armed robbery; Navarrete was acquitted of malice murder and armed robbery, but found guilty of the remaining charges. On January 27, 2006, Martinez was sentenced to life in prison for malice murder; a concurrent twenty years in prison for aggravated assault; five years in prison for possession of a knife during the commission of a crime, to be served consecutively to the life sentence; and ten years in prison for concealing the death of another person, to be served consecutively to the life sentence. A motion for new trial was filed on February 21, 2006, amended on February 15, 2007, and denied on November 8, 2007. A notice of appeal was filed on December 3, 2007, and the case was docketed in this Court on January 3, 2008. The appeal was argued orally on May 20, 2008.

drove them to an adult entertainment club; the club's bouncer approached Woodcoff and Martinez and asked them to remove Davis from the club because he was visibly intoxicated; Woodcoff and Martinez took Davis to Martinez's car, placed him in the back seat, and returned to the club where they continued drinking; approximately two hours later, the four men left the club and returned to Martinez's car; Burgoyne pulled Davis out of the back seat and without provocation, began to beat him; the others made no attempt to stop the fight; the five men again got into Martinez's car; Navarrete and Burgoyne sat in the back seat with Davis between them, and Woodcoff was in the front passenger seat; Martinez drove to a rural, wooded area about 20 minutes away; during the drive, Navarrete and Burgoyne continued to beat Davis, despite Woodcoff's entreaties for them to stop; Martinez stopped the car, and ordered everyone to get out; Martinez, Burgoyne, and Navarrete formed a circle around Davis; Burgoyne struck Davis several times and Davis began to walk toward Martinez and Navarrete; Martinez drew a knife and stabbed Davis, causing him to fall to the ground; Navarrete and Burgoyne urged Martinez to stop the attack, but Martinez disregarded their pleas; Burgoyne then walked back to the car and Navarrete followed; Davis got to his feet, but Martinez grabbed him around the neck and resumed stabbing him; Davis dropped to his knees; the attack continued with Martinez wounding Davis at least 33 times; the others observed the attack, but did nothing to aid Davis; Davis stopped moving, and Martinez and Burgoyne placed his body further into the woods and removed his identification; the four men returned to the car and Martinez drove a short distance to a clearing where they made the decision to burn the body; Martinez drove to a convenience store and Burgoyne collected money from the others to purchase lighter fluid and matches; the men returned to the location where they had dumped Davis's body, and Martinez and Burgoyne poured lighter fluid on the body and set it on fire, while Navarrete and Woodcoff remained in the car; Martinez then drove the men to their barracks at Fort Benning; several days later Martinez returned to the crime scene where he detected the odor of the victim's decaying body and he decided to bury it; Martinez, Navarrete, and Burgoyne returned to the scene that night with latex gloves, a shovel, and a change of clothes; and Navarrete stood lookout while Burgoyne attempted to bury the body.

After Davis was determined to be missing from military formation, he was declared "AWOL," and a military investigation ensued. Davis's remains were eventually found on November 7, 2004, after Burgoyne confided in another soldier about the murder and led investigators to the entire group.

1. The evidence was sufficient to enable a rational trier of fact to find Martinez guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Martinez contends that the trial court committed reversible error when it allowed the hearsay testimony of the State's witness Edward Wulff despite trial counsel's objection. This Court has already determined that while the admission of such testimony was error, it was harmless as to co-defendant Navarrete because it could not have contributed to the verdicts against him. *Navarrete v. State*, supra at 161 (2). So too, the admission of this evidence must be found to be harmless in regard to Martinez in light of the eyewitness testimony and other evidence of Martinez's commission of the crimes. Id.

3. There is likewise no merit to Martinez's contention that the trial court erred in restricting his cross-examination of Burgoyne in regard to Burgoyne's "combat experience and character while in the military," and in denying his consequent motion for mistrial. Martinez's counsel stated to the trial court that he sought to question Burgoyne about specific bad acts while in the military in order to show "what kind of person" Burgoyne was, and Martinez now urges that he should have been permitted to do so because Burgoyne had raised the issue of his character by admitting, on direct examination, his bad conduct in the military.[2] However, a defendant may not attempt to impeach the character or veracity of a witness by specific instances of prior misconduct "unless the misconduct has resulted in the conviction of a crime involving moral turpitude." *Al-Amin v. State*, 278 Ga. 74, 84 (14) (597 SE2d 332) (2004), quoting *Allen v. State*, 275 Ga. 64, 68 (3) (561 SE2d 397) (2002). Martinez does not suggest that the incidents in question resulted in any conviction. Certainly, a defendant is entitled to effective cross-examination, but a defendant is not entitled to cross-examination which is unfettered, and the trial court has broad discretion in limiting its scope. *Al-Amin v. State*, supra at 84 (14). There was no abuse of the trial court's discretion in restricting the cross-examination on the basis advanced, or in denying Martinez's motion for mistrial.

4. Martinez next contends that his trial counsel was ineffective in various respects. However,

---

[2] On direct examination, the State asked Burgoyne about the circumstances of the military's observation that Davis was missing, and in Burgoyne's response, he volunteered that at that time he was no longer in the same platoon as Davis and had been switched to a different one because he "got kicked out in Iraq."

[t]o prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Sanders v. State*, 283 Ga. 372, 374 (659 SE2d 376) (2008).

Martinez maintains that trial counsel's performance was deficient by failing to adequately prepare for trial in that counsel did not fully investigate and failed to present at trial an "insanity defense," that is, that Martinez suffered from Post-Traumatic Stress Disorder ("PTSD") resulting in his acting out of "delusional compulsion" in stabbing Davis. In support of this claimed deficiency, he cites the fact that his prior attorney had filed a notice of intent to raise the defense of delusional compulsion and had obtained an expert to evaluate him, and that the evaluation, which was provided to trial counsel, concluded that Martinez was suffering from PTSD, which was consistent with his memory loss of the night of the murder and his violent and dissociative behavior towards Davis; Martinez complains that despite this report, trial counsel failed to contact the expert or further investigate the disorder, and also that trial counsel ignored medical records showing that Martinez was referred for mental health treatment in September of 2003 after a military physician became concerned that he was suffering from PTSD. But, these complaints are unavailing.

Martinez was represented at trial by public defenders, Wadkins and Flournoy, who replaced the attorney who had filed the notice of intention to raise the defense of delusional compulsion on behalf of Martinez. Wadkins and Flournoy were not bound by the strategy employed by prior counsel, and the fact that they did not take the same defense path does not, in and of itself, demonstrate ineffectiveness. See *Williams v. State*, 282 Ga. 561, 565 (5) (c) (651 SE2d 674) (2007). Furthermore, trial counsel provided ample justification for not pursuing a defense involving Martinez's mental health. At the hearing on the motion for new trial, the lawyers testified collectively that they read the reports of Martinez's mental state; they conferred with Martinez and with his wife; they considered information that Martinez himself supplied; Wadkins reviewed material by the Department of Veterans Affairs about PTSD and spoke with people involved with treating veterans with PTSD about how the disorder would fit in with Martinez's defense; Wadkins had "first-hand" experience with PTSD because he had suffered from the condition

and been treated for it;[3] even if Martinez had PTSD, pursuing it before the jury did not fit in with the defense that he was not the one that fatally stabbed Davis; Martinez could not conceive that he might have committed the gruesome acts against the victim and he was not prepared to admit that he had done so as part of a defense of PTSD; the defense could explain why an individual would "snap and do something in reaction to some stimulation" but could not explain Martinez's subsequent actions of repeatedly stabbing Davis and engaging in a conspiracy to cover up the murder; under the circumstances they did not think the jury would accept a PTSD defense; defense counsel believed that Burgoyne's testimony was weak and they had a better chance of discrediting him than to raise a defense that would risk the jury feeling that Martinez was admitting to a gruesome and prolonged act; Wadkins, Flournoy, and Martinez collectively agreed that the success of raising a defense of delusional compulsion was highly unlikely; the attorneys and Martinez made a joint decision to abandon a delusional compulsion defense based upon PTSD; and the defense would "go after" Burgoyne instead. Thus, the evidence fails to demonstrate that trial counsel's decision to forego an insanity or delusional compulsion defense based upon PTSD was unreasonable. *Radford v. State*, 281 Ga. 303, 305 (2) (637 SE2d 712) (2006). Moreover, the fact that present counsel would have pursued a different strategy does not render trial counsel's strategy unreasonable. *Walker v. State*, 281 Ga. 521, 526 (7) (640 SE2d 274) (2007). Martinez has failed to carry his threshold burden of showing deficient performance by trial counsel. *Sanders v. State*, supra.

5. Lastly, despite the fact that Martinez has made the claim that trial counsel was ineffective because of the choice of defense, Martinez contends that his trial counsel violated his rights to due process under the State and Federal Constitutions by "abandoning and failing to present an insanity defense." However, as Martinez acknowledges, the evidence is that he agreed with and joined in the decision to forego a mental health defense. What is more, assuming the availability of a claim of violation of due process in the context of allegations of ineffectiveness of trial counsel as in this case, the evidence fails to demonstrate the asserted deficiency on the part of trial counsel, and thus, there is no foundation for Martinez's claim of deprivation of due process. See Division 4, supra.

*Judgments affirmed. All the Justices concur.*

---

[3] In brief, Martinez argues that Wadkins's "personal experience" with PTSD "biased" him against using it as a defense; however, there is no evidence to support such assertion, nor is there any evidence that Wadkins's own battle with PTSD negatively impacted or impeded his representation of Martinez.

Decided July 7, 2008.

*David S. West*, for appellant.

*J. Gray Conger, District Attorney, Stacey S. Jackson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.