### A10A0369. COATS v. THE STATE.
(695 SE2d 285)

BERNES, Judge.

Randy Steve Coats appeals the denial of his motion for new trial following his convictions for aggravated assault, making terroristic threats, and cruelty to children in the third degree. Coats contends that there was insufficient evidence that the crimes were committed on the date alleged in the indictment, and that the trial court erred in denying his motion for a continuance and in finding that he received effective assistance from his trial counsel. For the following reasons, we affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the jury's verdict. *Rouse v. State,* 290 Ga. App. 740 (660 SE2d 476) (2008). So viewed, the evidence showed that Coats lived with his wife and three

---

stepchildren. On the night in question, one of Coats's stepsons was watching television in the living room with a friend who was spending the night. Coats's other two stepchildren were asleep in their respective bedrooms.

Around 2:00 or 3:00 a.m., Coats suddenly came into the living room and began yelling at his stepson for watching television. Banging on the walls and screaming for everyone in the house to wake up, Coats then headed back down the hallway to the bedroom he shared with his wife. Because of the noise, Coats's other two stepchildren were awakened and came out of their bedrooms to see what was going on.

When Coats went into his bedroom, his wife tried to calm him down and told him to go back to bed. Screaming at his wife, Coats grabbed a walking stick and began to beat her with it. Coats's wife said that she was going to call 911, but Coats threatened to kill her if she made the call. Nevertheless, Coats's wife was able to get free from Coats, call 911, and inform the dispatcher that she was being attacked.

During the violent altercation between Coats and his wife, Coats's three stepchildren and the stepson's friend gathered together in the living room, upset and frightened. Coats's wife screamed for the four children to call 911 and to flee from the house. The stepson's friend, however, heard Coats threaten to kill them if they called 911. The four children then ran from the house and up the street toward a nearby convenience store as Coats headed down the hallway toward them. Coats's stepson called 911 as they ran up the street.

The children subsequently heard Coats start the engine on his truck and begin driving toward the convenience store. They hid behind some bushes near the store as a result. A responding police car stopped Coats's truck before Coats was able to locate the hiding children.

After the police car stopped Coats's truck, the children emerged from the bushes and spoke with a sheriff's deputy on the scene. The deputy then drove to Coats's home and spoke with his wife, who told the deputy that Coats had beaten her with the walking stick and had threatened to kill her if she called 911. While speaking with Coats's wife, the deputy observed that she had an abrasion on her right hand; red marks and bruising on her right arm; a large welt on her back; and a large knot and red spots on her head. The deputy took photographs of the most visible injuries.

Coats was arrested, indicted, and tried on one count of aggravated assault, five counts of making terroristic threats, and four counts of cruelty to children in the third degree. At trial, Coats's wife, his three stepchildren, the stepson's friend, and the sheriff's

deputy testified concerning what had transpired. The state also introduced into evidence a recording of the 911 call made by Coats's wife and the photographs of her injuries taken by the deputy. Lastly, the state introduced prior difficulties evidence reflecting that on a previous occasion, Coats had gotten into an altercation with his wife and had beaten her on the head with a firearm.

After hearing the evidence, the jury convicted Coats of the aggravated assault of his wife; of two counts of making terroristic threats to his wife and his stepson's friend, respectively; and of four counts of cruelty to children in the third degree. The jury acquitted Coats of three counts of making terroristic threats relating to threatening statements he allegedly made to his three stepchildren. The trial court denied Coats's motion for new trial, leading to this appeal.

1. Coats contends that the trial court erred in denying his motion for a directed verdict of acquittal because there was insufficient evidence that the offenses occurred on the night of July 9, 2008, the date referenced in the indictment. Coats emphasizes that the trial testimony reflected that the offenses occurred in the early morning hours of July 10, 2008, and, as a result, he contends that his convictions cannot stand. His argument is without merit.

"The general rule is that when the exact date of a crime is not a material allegation of the indictment, the crime may be proved to have taken place on any date prior to the return of the indictment, so long as the date is within the applicable statute of limitation." *Wilt v. State*, 265 Ga. App. 158, 160 (2) (592 SE2d 925) (2004). See also *Holder v. State*, 242 Ga. App. 479, 479 (1) (529 SE2d 907) (2000). Here, the exact date of the crimes was not a material allegation of the indictment because the exact date was not an essential element with respect to any of the charged offenses. See OCGA §§ 16-5-21 (a) (2), 16-5-70 (d) (2), 16-11-37 (a).[1] Nor did Coats offer any defense, such as alibi, that might render the dates of the crimes material. Furthermore, the date of the crimes proved at trial was prior to the return of the indictment and within the applicable limitation periods for the alleged crimes.[2] Consequently, there was sufficient evidence to support the allegations of the indictment, and the trial court did not err

---

[1] We also note that the indictment alleged that the crimes occurred "on *or about*" July 9, 2008. (Emphasis supplied.)

[2] The statute of limitation for the aggravated assault and the making of terroristic threats against an adult victim is four years. See OCGA §§ 16-5-21 (b), (j), 16-11-37 (c), 17-3-1 (c); *Desalvo v. State*, 299 Ga. App. 688 (683 SE2d 652) (2009). There is a seven-year statute of limitation for the making of terroristic threats against a victim under eighteen years of age at the time of the commission of the offense. See OCGA § 17-3-1 (c). The statute of limitation for the misdemeanor offense of cruelty to children in the third degree is two years. See OCGA §§ 16-5-70 (e) (3), 17-3-1 (d).

in denying Coats's motion for a directed verdict of acquittal. See *Wilt*, 265 Ga. App. at 160-161 (2); *Holder*, 242 Ga. App. at 479-480 (1).

2. Coats also contends that the trial court erred in denying his motion for a continuance so that he could locate and hire new counsel to replace his court-appointed counsel.

> Motions for continuance based on insufficient time to hire or substitute counsel are addressed to the sound discretion of the trial judge, and the trial judge's ruling will not be overturned absent an abuse of discretion. In addition, the trial judge may consider the conduct of a party in order to prevent a party from using the discharge and employment of counsel as a dilatory tactic. The party requesting the continuance must show that he exercised due diligence.

(Citation omitted.) *Choat v. State*, 246 Ga. App. 475, 476 (1) (540 SE2d 289) (2000). See also *Bearden v. State*, 241 Ga. App. 842, 844 (3) (528 SE2d 275) (2000). Based upon these principles, we discern no abuse of discretion by the trial court.

As an initial matter, Coats abandoned his motion for continuance and withdrew his request that his court-appointed attorney no longer represent him, after the trial court clarified a misconception that Coats had regarding how his court-appointed counsel would be compensated. A defendant cannot abandon a motion in the trial court and then argue on appeal that the failure to grant the motion was improper. See generally *Collins v. State*, 266 Ga. App. 871, 873 (1) (601 SE2d 111) (2004) ("One cannot complain on appeal of a result that he procured or which his own conduct or procedure aided in causing.") (punctuation and footnote omitted).

In any event, Coats failed to show that he exercised due diligence in attempting to locate and hire new counsel. By the time that the trial commenced in January 2009, Coats's court-appointed counsel had been representing him in various court proceedings since his arrest in July 2008. Coats also had previously been made aware of the impending trial date during the course of plea negotiations. Nonetheless, there is no evidence that Coats made any effort to seek out and hire new counsel prior to the day of trial. Indeed, he waited until the morning of the trial to inform his court-appointed counsel that he wanted new representation, and to request additional time from the trial court to locate and retain new counsel. In view of Coats's dilatory conduct, the trial court was not required to grant a continuance, even if Coats had not abandoned his motion. See *Choat*, 246 Ga. App. at 476 (1); *Bearden*, 241 Ga. App. at 844-845 (3).

3. Coats contends that his trial counsel was ineffective by failing

to present expert testimony at trial that he was suffering from delirium and confusion caused by drug-induced hypoxia at the time of the alleged crimes. Because Coats's trial counsel made a reasonable strategic decision not to pursue a medical defense or present expert testimony on the issue, Coats cannot prove that he received ineffective assistance.

> [T]o prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Martinez v. State*, 284 Ga. 138, 141 (4) (663 SE2d 675) (2008). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In addressing the question of ineffective assistance, "[a] reviewing court weighs the effectiveness of trial counsel's performance from counsel's perspective at the time of trial." *Radford v. State*, 281 Ga. 303, 304 (2) (637 SE2d 712) (2006). See also *Rouse*, 290 Ga. App. at 742 (1) (ineffective assistance claims are not judged by hindsight, "for there are no perfect trials") (citation and punctuation omitted). We will uphold a trial court's findings of fact on a claim of ineffective assistance unless clearly erroneous. *Radford*, 281 Ga. at 304 (2).

At the hearing on the motion for new trial, Coats presented expert testimony of an emergency room physician who had examined Coats after sentencing and who had reviewed his medical records, including records from an emergency room visit on July 1, 2008. On that visit, Coats had been treated for a severe nosebleed and had been prescribed Percocet, a narcotic pain reliever. The expert testified that based upon the depressed respirations caused by the narcotic combined with Coats's severe sleep apnea, it was his medical opinion that Coats suffered from drug-induced hypoxia (or lack of oxygen) at the time of the crimes, resulting in delirium, confusion, and aggressive conduct. Coats maintained at the hearing that his trial counsel performed deficiently by not presenting such expert testimony at trial.

Coats's trial counsel testified at the hearing that she had practiced criminal law for 19 years and in that time had tried hundreds of cases. Trial counsel testified that while she had cross-examined Coats's wife about his medical history and use of prescription drugs, she had decided not to focus on the medical issue and instead chose to pursue the defense theory that Coats had not

committed the alleged criminal acts. In this respect, trial counsel testified that she was aware of the possibility of presenting a medical defense through expert testimony based upon her pre-trial discussions with Coats's wife and her review of the medical records, but chose not to present the defense for two reasons.

First, trial counsel believed that the medical defense would have been an affirmative defense requiring Coats to admit to the underlying criminal conduct alleged in the indictment. See *Burnette v. State*, 291 Ga. App. 504, 510-511 (2) (662 SE2d 272) (2008) ("[Because] [a]n affirmative defense is one that admits the doing of the act charged but seeks to justify, excuse, or mitigate it[,] [t]he defendant must admit the crime before [he] can raise the defense.") (footnotes omitted).[3] Despite the fact that she had explained to Coats how affirmative defenses worked, Coats gave conflicting stories about what had occurred and on several occasions told her "he didn't do it." Having concluded that Coats was not prepared to admit that he committed the acts alleged, trial counsel chose not to enter a special plea of insanity or involuntary intoxication.

Second, trial counsel had reviewed the case file pertaining to the prior difficulty between Coats and his wife and knew that Coats's sentence had been reduced in mitigation in that case due to his misuse of a prescription medication. Given that there had been a prior altercation between Coats and his wife involving his misuse of a prescription medication, trial counsel believed that the jury likely would reject any medical defense she might present as nothing more than "a pattern of conduct" by Coats.

We conclude that trial counsel's decision not to pursue a medical defense through expert testimony was a reasonable strategic one, and, therefore, did not constitute deficient performance. Tactical or strategic decisions by defense counsel "do not constitute deficient performance unless they are so patently unreasonable that no

---

[3] The affirmative defense in question would have been either insanity or involuntary intoxication. See *Stewart v. State*, 291 Ga. App. 846, 847 (663 SE2d 278) (2008) (insanity and involuntary intoxication are affirmative defenses). A defendant is legally insane at the time of the alleged crime if he did "not have the mental capacity to distinguish between right and wrong or [acted as he did] because of a delusional compulsion." *Foster v. State*, 283 Ga. 47, 48 (1) (656 SE2d 838) (2008). See OCGA §§ 16-3-2, 16-3-3. "[I]nvoluntary intoxication may be a defense where the accused did not have sufficient mental capacity to distinguish between right and wrong in relation to such act." (Citation and punctuation omitted.) *Burchfield v. State*, 219 Ga. App. 40, 41 (1) (464 SE2d 27) (1995). See OCGA § 16-3-4 (a). "Involuntary intoxication means intoxication caused by: (1) [c]onsumption of a substance through excusable ignorance; or (2) [t]he coercion, fraud, artifice, or contrivance of another person." OCGA § 16-3-4 (b). See *Swenson v. State*, 196 Ga. App. 898, 899 (1) (397 SE2d 211) (1990). "Excusable ignorance" may include reliance upon a physician's prescription, at least where the defendant was ingesting the prescription in the quantity and manner directed by the physician. See *Johnson v. State*, 235 Ga. 486, 489 (1) (220 SE2d 448) (1975); *Goldsmith v. State*, 148 Ga. App. 786, 789 (6) (252 SE2d 657) (1979).

competent attorney would have chosen them." (Punctuation and footnote omitted.) *Nesbitt v. State*, 296 Ga. App. 139, 142 (3) (d) (673 SE2d 652) (2009). "Decisions regarding which defense or defenses to pursue at trial are a matter of strategy with which this [c]ourt will not generally interfere." *Daniel v. State*, 228 Ga. App. 634, 635 (492 SE2d 542) (1997). Likewise, "[t]he decision on whether to call an expert witness is one of trial strategy." *Weeks v. State*, 270 Ga. App. 889, 894 (3) (a) (608 SE2d 259) (2004).

The record reflects that Coats's trial counsel made an informed decision not to pursue the medical defense through expert testimony based upon the representations made to her by Coats over the course of several client interviews, and in light of her assessment that a jury would be unlikely to view the defense as plausible. Under these circumstances, trial counsel's strategic decision did not fall outside the wide range of reasonable professional assistance acceptable at trial. See *Martinez*, 284 Ga. at 141-142 (4) (decision not to pursue affirmative defense of insanity based upon post-traumatic stress disorder was a reasonable strategic one, where, among other things, defendant was not prepared to admit that he committed the underlying violent act, and defense counsel believed that jury would not accept such a defense as a plausible explanation for why defendant was violent); *Radford*, 281 Ga. at 304-305 (2) (decision not to pursue mental health defense was a reasonable strategic one where defense counsel believed that such a defense would have detracted from what he perceived as the stronger defense of justification); *Lawton v. State*, 285 Ga. App. 45, 47 (645 SE2d 571) (2007) (decision over which defense to pursue was a reasonable strategic one in light of the representations made by the defendant to his counsel prior to trial); *Rigo v. State*, 269 Ga. App. 383, 385-386 (4) (604 SE2d 238) (2004) (decision not to pursue "phen-fen" defense was a reasonable strategic one where defense counsel investigated such a defense prior to trial and believed that it would not be a viable defense to the charged offenses). Cf. *Alston v. State*, 277 Ga. App. 117, 117-118 (1) (a) (625 SE2d 475) (2005) (withdrawal of request for jury charge on an affirmative defense was not ineffective assistance where defendant did not make the requisite admissions to support such a defense). Furthermore, the effectiveness of trial counsel's strategic decision to defend on the alternative ground that Coats did not commit the alleged criminal acts is demonstrated by the fact that the jury acquitted Coats of several of the charged offenses. See *Young v. State*, 213 Ga. App. 278, 280 (3) (444 SE2d 598) (1994) (noting that the "strongest evidence of trial counsel's effectiveness" was the defendant's acquittal on one of the charges). Accordingly, Coats failed to carry his threshold burden of proving deficient performance by trial

counsel, and the trial court did not err in denying Coats's ineffective assistance claim.[4]

*Judgment affirmed. Barnes, P. J., and Blackburn, J., concur.*

DECIDED APRIL 22, 2010.

*Todd M. Johnson*, for appellant.

*T. Joseph Campbell, District Attorney, Elizabeth M. York, Assistant District Attorney*, for appellee.

---

[4] Because we have concluded that Coats failed to prove deficient performance by his trial counsel, we need not address Coats's separate contention that the trial court applied the wrong legal standard for determining whether trial counsel's alleged deficiency was prejudicial. See *Carson v. State*, 286 Ga. App. 167, 170 (2) (648 SE2d 493) (2007) (noting that a defendant's "failure to show any deficiency makes it unnecessary . . . to address the issue of whether he was prejudiced by the alleged deficiency").