**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 7, 2018**

# In the Court of Appeals of Georgia

A18A0279. WILLIAMS v. THE STATE.

RAY, Judge.

A jury convicted Kenneth Williams of two counts of child molestation (OCGA § 16-6-4 (a)) and one count of aggravated sexual battery (OCGA § 16-6-22.2). He filed the instant appeal from the denial of his motions for new trial. For the reasons that follow, we affirm Williams' convictions for child molestation. We are constrained by a 2015 decision of the Georgia Supreme Court to reverse his conviction for aggravated sexual battery and remand the case for a new trial on that issue.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict. We neither weigh the evidence nor judge the credibility of the

witnesses, but determine only whether the jury was authorized by the evidence to find the defendant guilty of the crimes charged. *Laster v. State*, 340 Ga. App. 96, 97 (796 SE2d 484) (2017).

The evidence adduced at trial showed that in 2013, E. H., who was four years old at the time and staying at her grandmother and Williams' house, contacted her mother via FaceTime, crying and asking to come home. Williams was E. H.'s step-grandfather. In the car on the way home, E. H. told her mother that she had a "secret" with Williams, whom she called "Poppy." E. H. said that Williams had been touching her privates. At trial, E. H. responded affirmatively when asked if Williams touched her "in" her privates, but also testified that he only touched her on the outside of her privates and that her panties were "up" when he touched her. Specifically, E. H. told her mother, "Poppy touches my hoo-hoo and I touch his wee-wee." These were words that E. H.'s family used, respectively, to refer to the vagina and the penis. E. H. later made a consistent report about the touching to her father, and was upset and crying when she did so. E. H.'s behavior was matter-of-fact and normal when she relayed this information to her mother. The mother said E. H. was "adamant" that the touching had happened. At some point in 2013, E. H. told her mother that Williams "had put his finger inside her vagina."

After E. H. made outcry to her mother, Williams told his wife, E. H.'s grandmother, about a number of incidents occurring between September 2012 and July 2013 in which E. H. approached him, squeezed his penis or testicles, sometimes punched his testicles, and took his finger to touch her vagina. The grandmother testified that Williams demonstrated for her how he touched E. H. at the top of her vagina, on the outside, and agreed that it was "undisputed" that this had happened. The grandmother testified that Williams never said specifically that he did not put his finger inside E. H.'s vagina. The grandmother took notes on these incidents in an e-mail that she eventually sent to E. H.'s mother and from which she was questioned at trial. When asked if E. H. "would touch his penis and he would touch her vagina," the grandmother said Williams had told her that it did not happen on each visit, but "[i]f it happened, it only happened once" each time E. H. visited.

Jill Hesterlee, a registered nurse and forensic interviewer, interviewed E. H. in August 2013 at the Carroll County Child Advocacy Center. It was a recorded video interview, which was tendered into evidence and played for the jury. During the interview, Hesterlee showed E. H. drawings of male and female subjects, and had her identify various body parts. E. H., pointing at the genitals on the drawings, said that "Poppy" (Williams) touched her and she touched him, more than once, in places that

3

were not okay, but that "he said it was okay" and "we don't want grammy to see because it was just our secret." E. H. also told Hesterlee that she and Williams pulled their pants and underwear down, and that he touched her vagina "with his fingers." When Hesterlee asked E. H. whether Williams touched her "hoo-hoo" (vagina) on the outside or the inside, E. H. responded, "both" and "both, sometimes." Asked what this felt like, E. H. responded, "It tickles a little bit and it feels so good . . . it feels good in and out." E. H. said she did not want Williams to stop. Hesterlee then asked, "So he does his finger in and out?" E. H. nodded affirmatively.

E. H. told a counselor, whom she was seeing at the time of trial, that she felt bad for not telling Williams "no" when he touched her, that she wanted the touching to stop, and that she did not feel comfortable.

1. Williams contends that the evidence is insufficient to sustain his conviction for aggravated sexual battery[1] because no rational trier of fact could have found the element of penetration beyond a reasonable doubt. He argues that E. H.'s testimony was inconsistent, and that her statements in a forensic interview "were not very clear" and were "the product of suggestive questioning."

---

[1] Williams does not contest the sufficiency of the evidence as to his convictions for child molestation.

"A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b). The Code section defines "foreign object" as "any article or instrument other than the sexual organ of a person." OCGA § 16-6-22.2 (a). A finger is considered a foreign object under OCGA § 16-6-22.2 (a). *Hardeman v. State*, 247 Ga. App. 503, 504 (2) (544 SE2d 481) (2001).

Although E. H. gave some conflicting testimony, there was some evidence, as outlined above, that Williams' finger went into E. H.'s vagina. See *Kirkland v. State*, 334 Ga. App. 26, 27-28, 33 (3) (778 SE2d 42) (evidence sufficient to sustain defendant's conviction for aggravated sodomy where relatives of child victim testified that child told them defendant made her engage in oral sex, but victim, who was four years old when testifying at trial, only nodded affirmatively to related questions, said she forgot, or refused to answer). There also was evidence that E. H. did not consent, in that she told one of her counselors that she did not want Williams to touch her and wanted him to stop.[2] Any issues of inconsistency or credibility of testimony are for the jury, not this Court, and the jury was authorized by the evidence

---

[2] The issue of "consent" is more fully discusssed in division 2 herein.

to conclude that aggravated sexual battery occurred. *Pearce v. State*, 300 Ga. App. 777, 779-780 (1) (686 SE2d 392) (2009).

2. Williams argues that the trial court erred by instructing the jury, in regard to the aggravated sexual battery count, that a child under the age of 16 lacks the legal capacity to consent to any sexual act. This instruction, Williams contends, relieved the State of its burden to prove that the crime was committed without the child's consent.

The trial court charged the jury that, "[a] person commits the offense of aggravate[d] sexual battery when one intentionally penetrates with a foreign object the sexual organ of another person without the consent of that person." See OCGA § 16-6-22.2 (b). The trial court immediately added, "As I previously charged, a child under the age of 16 cannot legally consent to any sexual act."

As Williams concedes, "[a]lthough the charge was a correct statement of the law at the time it was given, following the trial, the Supreme Court of Georgia held that the crime of sexual battery requires actual proof of the victim's lack of consent, regardless of the victim's age." (Punctuation omitted.) *Laster*, supra at 100 (2), citing *Watson v. State*, 297 Ga. 718, 720-721 (2) (777 SE2d 677) (2015). In *Duncan v. State*, 342 Ga. App. 530, 540-541 (6) (804 SE2d 156) (2017), which also involved a

6

case in the appellate pipeline when *Watson* was decided, this Court found that the State also must prove a victim's lack of consent in cases of aggravated sexual battery. As the *Watson* Court determined,

> [T]he offense at issue here, however – despite its denomination a 'sexual' battery – does not require any *sexual* contact at all. Rather, . . . it involves non-consensual, intentional physical contact with a victim's intimate body parts. That an individual is legally incapable of consenting to sexual contact does not necessarily mean that such individual is legally incapable of consenting to physical contact with her intimate body parts. . . . We decline to construe the sexual battery statute in a manner that would criminalize a wide range of apparently innocent conduct. Instead, we construe the statute to require actual proof of the victim's lack of consent, regardless of the victim's age.

Id. at 720 (2) (citations and punctuation omitted; emphasis in original).[3] See *Duncan*,

supra at 540-541 (6) (applying *Watson* to cases involving aggravated sexual battery).

Williams argues, for the first time on appeal, that the instant case was not yet

final and, thus, was in the appellate "pipeline" at the time *Watson* was decided.[4]

*Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001) (applying new rule of

criminal procedure regarding jury instructions to "all cases in the 'pipeline' – i.e.,

---

[3] On motion for reconsideration, the State argues that *Watson* is inapplicable because the conduct implicated by the sexual battery statute, OCGA § 16-6-22.1 (b), non-consensual, intentional touching, is completely different from that implicated by the aggravated sexual battery statute, OCGA § 16-6-22.2 (b), which criminalizes intentional penetration of another's sexual organ or anus without that person's consent. The State argues that penetration is an "inherently sexual act for age-of-consent purposes[.]" We certainly accept that this is true in most situations, but not always. For example, a gynecological examination performed on a girl of 15 would involve a penetration with a speculum, swab, and/or the physician's gloved finger. Additionally, a parent might conduct an anal examination of his or her child who is suspected of being infected with pinworms. Neither of these situations would be sexual in nature. The State also argues that *Disabato v. State*, 303 Ga. App. 68, 70 (1) (692 SE2d 701) (2010), is binding authority holding that the State need not prove the victim's lack of consent in the aggravated sexual battery context. However, *Disabato*, supra at 70 (1), n. 7, relied on *Carson v. State*, 259 Ga. App. 21, 22 (1) (576 SE2d 12) (2002). *Carson* has since been overruled, by *Watson*, supra at 720 (2), on the very proposition for which it was cited in *Disabato*. Thus, *Watson* impliedly overruled *Disabato* and its progeny. See, e. g., *Carter v. State*, 320 Ga. App. 454, 456 (1) (740 SE2d 195) (2013).

[4] See *Freeman v. State*, 269 Ga. 337, 339 (1) (C) (496 SE2d 716) (1998) (defining the appellate pipeline as including cases poised "between conviction and direct appeal").

cases which are pending on direct review or not yet final") (citations omitted). Thus,

"the *Watson* holding governs our analysis. We therefore must determine whether the

charge was harmless, i.e., whether it is highly probable that the erroneous charge did

not contribute to the jury's verdict." (Citation and footnote omitted.) *Duncan*, supra

at 541 (6). Although the State argues that plain error review applies in the instant

case, that question was settled to the contrary in *Duncan*. Id. at 541 (6), n. 18.[5]

---

[5] In *Duncan*, as in the instant case, the defendant did not raise a contemporaneous objection to the jury charge at trial. See *Duncan v. State*, Case No. A17A1224, appellant's brief at p. 40. The State cites to three cases in arguing that plain error review applies here because Williams did not object to the jury instruction at trial. Those cases involved counsel's reservation of the right to raise objections to the jury charge on appeal. *Brockman v. State*, 292 Ga. 707, 730 (17) (739 SE2d 332) (2013), *Lewis v. State*, 291 Ga. 273, 278 (4), n. 5 (731 SE2d 51) (2012), and *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992). However, the trials in all three cases took place prior to 2007. See *Brockman*, supra 707, n. 1; *Lewis*, supra at 273, n. 1; and *Taylor*, supra at 584, n. 1. Effective July 1, 2007, OCGA § 17-8-58, as amended, provided that the failure to raise a specific objection to jury instructions precludes appellate review except in cases of plain error. Obviously, if a jury instruction is correct when given, a defendant cannot raise a valid, specific, *contemporaneous* objection to it "before the jury retires to deliberate." OCGA § 17-8-58 (a). Thus, the rationale in *Duncan* applies to the instant case. We note that the instant case involves a *substantive* change in the law, see *Luke v. Battle*, 275 Ga. 370, 370 (565 SE2d 816) (2002) (finding, in the appellate pipeline context, that a substantive, as opposed to procedural, change in the law occurs when a change in criminal law "place[s] certain conduct beyond the reach of the [applicable criminal statute] that before that decision could have led to criminal liability"). *Taylor*, supra at 586 (3), which the State cites, is distinguishable as it provides that new rules of criminal *procedure* are applied to pending cases "depend[ing] on the preservation of the issue for appellate review[.]"

"Because the erroneous jury instruction here effectively relieved the State of its burden to prove an essential element of the crime of aggravated sexual battery, the instruction cannot be said to have been harmless. Accordingly, [Williams'] conviction[] for aggravated sexual battery must be reversed." (Citations and punctuation omitted.) *Duncan*, supra at 541 (6).

3. Williams argues that he received ineffective assistance of counsel in several respects.

> A criminal defendant asserting an ineffective assistance of counsel claim is
>
> required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable. On appellate review, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

(a) Williams contends that he received ineffective assistance because his trial counsel failed to properly request a jury instruction on the definition of excusable ignorance as it pertained to his involuntary intoxication defense. Williams contended

10

at trial that he was not responsible for his actions because he was taking a prescription medication called Lisinopril. Specifically, he argues that his trial counsel should have requested that the trial court charge on the definition of "excusable ignorance."

Trial counsel filed a written request for the pattern charge on involuntary intoxication, which the trial court gave as follows:

> A person shall not be found guilty of a crime when at the time of the conduct constituting the crime the person does not have sufficient mental capacity to distinguish between right and wrong in relation to the criminal act because of involuntary intoxication. Involuntary intoxication means intoxication caused by consumption of a substance through excusable ignorance.

The trial court also charged the jury on voluntary intoxication. At the motion for new trial hearing, trial counsel testified that if he had known of case law providing that excusable ignorance could include reliance on a physician's prescription when the defendant was taking the medication as prescribed, he would have requested a jury instruction on it, and that he had no strategic reason for not making such a request.

Involuntary intoxication is an affirmative defense. See *Coats v. State*, 303 Ga. App. 818, 823 (3), n. 3 (695 SE2d 285) (2010). In order to raise an affirmative defense, the defendant must first admit to the act charged, then seek to justify,

11

mitigate or excuse it. Id. at 823 (3). As Williams did not admit to all the elements of the offenses charged,[6] the evidence did not support a charge on this affirmative defense and trial counsel's failure to request a charge related to that unsupported defense did not constitute ineffective assistance. See *Boccia v. State*, 335 Ga. App. 687, 693 (1) (b) (ii) (782 SE2d 792) (2016).

(b) Williams also raises two other ineffectiveness claims which relate only to the aggravated sexual battery count. Because we are reversing Williams' conviction for aggravated sexual battery and the alleged errors are moot or unlikely to recur on retrial, we do not address them.

Thus, we affirm Williams' convictions for child molestation, and we reverse his conviction for aggravated sexual battery and remand that portion of the case for retrial.

*Judgment affirmed in part and judgment reversed in part and case remanded. McFadden, P.J., and Rickman, J., concur.*

---

[6] Williams did not testify at trial, and neither opening nor closing statements were included in the appellate record.