308 Ga. 228
FINAL COPY

S19G0005. THE STATE v. WILLIAMS.

BENHAM, Justice.

We granted a writ of certiorari to determine whether the Court of Appeals correctly reversed Kenneth Howard Williams' conviction for aggravated sexual battery (OCGA § 16-6-22.2[1]) based on its conclusion that the trial court gave an erroneous charge to the jury concerning an underage victim's capacity to consent. The parties addressed the following questions in their briefing and at oral argument:

> (1) Is the State required under OCGA § 16-6-22.2 to show lack of consent in order to prove an aggravated sexual battery against an alleged victim under the age of 16?

---

[1] OCGA § 16-6-22.2 provides in pertinent part:
> (a) For the purposes of this Code section, the term "foreign object" means any article or instrument other than the sexual organ of a person.
> (b) A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person.
> . . .

(2) If so, did the Court of Appeals err in applying the "pipeline rule" to reverse Williams's conviction for aggravated sexual battery?

Now having considered the parties' briefs and arguments, we reverse the judgment of the Court of Appeals in part[2] for the reasons set forth below.

The record shows that in September 2015, Williams was convicted of aggravated sexual battery, among other charges,[3] for molesting his four-year-old step-granddaughter. See *Williams v. State*, 347 Ga. App. 6 (815 SE2d 590) (2018). The Court of Appeals set forth the underlying facts of the case as follows:

> The evidence adduced at trial showed that in 2013, E. H., who was four years old at the time and staying at her grandmother and Williams' house, contacted her mother via FaceTime, crying and asking to come home. Williams was E. H.'s step-grandfather. In the car on the way home, E. H. told her mother that she had a "secret" with Williams, whom she called "Poppy." E. H. said that Williams had been touching her privates. At trial, E. H. responded affirmatively when asked if Williams touched

---

[2] This appeal does not address those portions of the Court of Appeals' judgment that do not concern Williams' conviction for aggravated sexual battery.

[3] Williams was also convicted on two charges of child molestation (OCGA § 16-6-4 (a)).

2

her "in" her privates, but also testified that he only touched her on the outside of her privates and that her panties were "up" when he touched her. Specifically, E. H. told her mother, "Poppy touches my hoo-hoo and I touch his wee-wee." These were words that E. H.'s family used, respectively, to refer to the vagina and the penis. E. H. later made a consistent report about the touching to her father, and was upset and crying when she did so. E. H.'s behavior was matter-of-fact and normal when she relayed this information to her mother. The mother said E. H. was "adamant" that the touching had happened. At some point in 2013, E. H. told her mother that Williams "had put his finger inside her vagina."

After E. H. made the outcry to her mother, Williams told his wife, E. H.'s grandmother, about a number of incidents occurring between September 2012 and July 2013 in which E. H. approached him, squeezed his penis or testicles, sometimes punched his testicles, and took his finger to touch her vagina. The grandmother testified that Williams demonstrated for her how he touched E. H. at the top of her vagina, on the outside, and agreed that it was "undisputed" that this had happened. The grandmother testified that Williams never said specifically that he did not put his finger inside E. H.'s vagina. The grandmother took notes on these incidents in an e-mail that she eventually sent to E. H.'s mother and from which she was questioned at trial. When asked if E. H. "would touch his penis and he would touch her vagina," the grandmother said Williams had told her that it did not happen on each visit, but "[i]f it happened, it only happened once" each time E. H. visited.

Jill Hesterlee, a registered nurse and forensic interviewer, interviewed E. H. in August 2013 at the Carroll County Child Advocacy Center. It was a recorded video interview, which was tendered into evidence and

3

played for the jury. During the interview, Hesterlee showed E. H. drawings of male and female subjects, and had her identify various body parts. E. H., pointing at the genitals on the drawings, said that "Poppy" (Williams) touched her and she touched him, more than once, in places that were not okay, but that "he said it was okay" and "we don't want grammy to see because it was just our secret." E. H. also told Hesterlee that she and Williams pulled their pants and underwear down, and that he touched her vagina "with his fingers." When Hesterlee asked E. H. whether Williams touched her "hoo-hoo" (vagina) on the outside or the inside, E. H. responded, "both" and "both, sometimes." Asked what this felt like, E. H. responded, "It tickles a little bit and it feels so good ... it feels good in and out." E. H. said she did not want Williams to stop. Hesterlee then asked, "So he does his finger in and out?" E. H. nodded affirmatively.

E. H. told a counselor, whom she was seeing at the time of trial, that she felt bad for not telling Williams "no" when he touched her, that she wanted the touching to stop, and that she did not feel comfortable.

Id. at 7-8.

After the close of evidence at trial, the trial court instructed the jury as follows:

A person commits the offense of aggravate[d] sexual battery when one intentionally penetrates with a foreign object the sexual organ of another person without the consent of that person. . . . As I previously charged, a child under the age of 16 cannot legally consent to any sexual act.

(Citation omitted.) *Williams*, 347 Ga. App. at 9. The jury

4

subsequently returned a verdict of guilty on the charge of aggravated sexual battery. Williams appealed his conviction for that charge.

In 2018, the Court of Appeals reversed Williams' conviction. In support of its decision, the Court of Appeals relied on this Court's decision in *Watson v. State*, 297 Ga. 718 (777 SE2d 677) (2015), in which we held that to sustain a charge of *sexual battery* (OCGA § 16-6-22.1[4]), the State is obligated to provide "actual proof of the victim's lack of consent regardless of the victim's age." In addition, the Court of Appeals relied on its own precedent in *Duncan v. State*, 342 Ga. App. 530 (804 SE2d 156) (2017), which in turn relied on *Laster v. State*, 340 Ga. App. 96 (796 SE2d 484) (2017). In those cases, the Court of Appeals extended our reasoning in *Watson* beyond the sexual battery statute and applied it to the aggravated sexual

---

[4] OCGA § 16-6-22.1 (b) provides:
A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person.

5

battery statute. Id.[5] Therefore, the Court of Appeals concluded that the above jury instruction was improper to the extent it relieved the State of its obligation to present "actual proof" of the underage victim's lack of consent. See *Williams*, 347 Ga. App. at 10-11. While it was not improper for the Court of Appeals to rely on the reasoning in *Watson*, we nevertheless conclude that Williams' conviction for aggravated sexual battery may stand.

1. Because *Watson*, *Duncan*, and *Laster* were decided after Williams' trial but before his appeal was complete, the Court of Appeals used the "pipeline rule" to reach the merits of his claim. This was error. The trial record shows Williams did not object to the trial court's jury instruction about the age of consent as it related to aggravated sexual battery. Inasmuch as Williams did not object to the trial court's jury instruction at trial, the matter may only be reviewed for plain error.[6] See OCGA § 17-8-58 (b); *State v. Herrera-*

---

[5] This appeal is the first time this Court has considered whether to apply *Watson* to the offense of aggravated sexual battery.

[6] This is in contrast to *Watson*, where the defendant did object at trial to a similar instruction as it related to sexual battery such that we did not apply

*Bustamante*, 304 Ga. 259 (2) (a)-(b) (818 SE2d 552) (2018). See also

*Givens v. State*, 294 Ga. 264 (2) (751 SE2d 778) (2013).

2. This Court has explained plain error analysis as follows:

> To show plain error, [Williams] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

(Punctuation omitted.) *Lupoe v. State*, 300 Ga. 233 (4) (794 SE2d 67)

(2016).

Thus, the first and second prongs of the plain error test require

a showing of an unwaived error that is clear and not reasonably

disputed. Id. Additionally, when applying the second prong of the

plain error test, we look to the law existing at the time of appeal.

See *Lyman v. State*, 301 Ga. 312 (2) (800 SE2d 333) (2017). In light

of our decision in *Watson*, as well as the Court of Appeals'

---

plain error analysis. We disapprove of *Duncan*, 342 Ga. App. at 541, n. 18 to the extent the Court of Appeals failed to apply plain error analysis when that defendant did not object to the jury instruction at trial (see *Williams*, 347 Ga. App. at 10, n.5 (noting that the defendant in *Duncan* did not object to the jury instruction at trial)).

7

subsequent decisions in *Duncan* and *Laster*, we agree with the Court of Appeals that the trial court's instruction on underage consent was clearly erroneous when coupled with the charge on aggravated sexual battery. In *Watson,* we recognized that lack of consent was a textual element of the crime of sexual battery. 297 Ga. at 719. We also determined that the crime of sexual battery does not actually require sexual contact and, if broadly construed, could include a wide range of benign conduct. Id. at 720. Thus, we held that the statute is most reasonably construed to require proof of lack of consent even when the victim is under the age of sixteen. Id. Finally, we concluded that the instruction that a person under sixteen cannot consent to sexual conduct, while a correct statement of the law as to some offenses (e.g., child molestation), could not be applied to the crime of sexual battery. Id. at 721.

As with the sexual battery statute, the offense of aggravated sexual battery, which also lists lack of consent as a textual element of the crime, does not require that the prohibited conduct be sexual

in nature.[7] It is possible that the intentional penetration with a foreign object of an underage individual's sexual organ or anus could include non-sexual conduct such as the insertion of a rectal thermometer into an infant or the performance of a pelvic exam on a teenage girl. Thus the logic in *Watson* extends to the offense of aggravated sexual battery. Accordingly, the State is not exempt from proving lack of consent at trial merely because the victim is under the age of sixteen when establishing a violation of the aggravated sexual battery statute. However, our analysis does not end here. The third prong of the plain error test still requires us to determine whether the trial court's erroneous instruction likely would have affected the outcome of the proceedings such that a defendant's substantial rights were impacted. See *Rainwater v. State*, 300 Ga. 800 (2) (797 SE2d 889) (2017).

While relieving the State from proving an element of the crime can certainly be harmful error affecting the outcome of a proceeding

---

[7] We note in this respect that penetration with a sexual organ is not aggravated sexual battery. See OCGA § 16-6-22.2 (a).

9

(see *Watson*, 297 Ga. at 721),[8] it is unlikely, given the evidence presented in this case, that the instruction at issue affected Williams' substantial rights. It is undisputed that the victim was four years old when Williams, on several occasions, intentionally penetrated the victim's vagina with his finger. There was no allegation or contention that Williams' conduct was benign or non-sexual in nature, and the evidence of his actions was substantial. It is hard to fathom any context in which a child of such a young age would have the capacity to consent to such conduct by an adult,[9] in

---

[8] The evidence of lack of consent in this case is considerably different than the evidence in *Watson* and *Laster* (and may be different than the evidence in *Duncan*). Moreover, in *Watson* we applied nonconstitutional harmless error analysis because, at trial, the defendant objected to the improper jury instruction. When nonconstitutional harmless error analysis is applied on appeal, the State has the burden to show that it was highly probable that the error did not contribute to the verdict. See *Bozzie v. State*, 302 Ga. 704 (2) (a) (808 SE2d 671) (2017). When plain error analysis is applied on appeal, *the appellant* has to make an "affirmative showing that the error probably did affect the outcome below." (Citation and punctuation omitted.) Id. at 708. Because we are applying plain error analysis in this case and the burden of proof is on the appellant, the final outcome in *Watson* is not directly binding as to the outcome set forth in this opinion.

[9] Notably, it has been recognized within the context of tort law that a child's capacity to consent varies in accordance with the stages of development.

> A minor acquires capacity to consent to different kinds of invasions and conduct at different stages in his development. Capacity exists when the minor has the ability of the average person to understand

10

particular an adult who is an authority figure and familiar to the child as Williams was. Under the circumstances of this case, where the victim was so very young, the conduct was clearly sexual in nature, the adult was an authority figure in the child's life, and the evidence was strong, it is unlikely that the trial court's instruction affected the jury's decision to return a verdict of guilty for the charge of aggravated sexual battery.

In other words, the jury instruction error did not constitute plain error here, given the circumstances explained above; even had the jury been instructed that the State had to prove lack of consent, no rational juror could have concluded, based on the record presented at trial, that the State had failed to prove that element in this case. Accordingly, the judgment of the Court of Appeals is reversed as it pertains to Williams' conviction for aggravated sexual

---

and weigh the risks and benefits. (Footnote omitted.) Prosser & Keeton, Torts, § 18, p. 115 (5th ed.1984).

(Punctuation omitted.) *McNamee v. A. J. W.*, 238 Ga. App. 534, 538 (519 SE2d 298) (1999).

battery.

*Judgment reversed in part and case remanded.  All the Justices concur, except Warren, J., who concurs in judgment only. Melton, not participating.*

DECIDED FEBRUARY 10, 2020
--- RECONSIDERATION DENIED MARCH 13, 2020.
Certiorari to the Court of Appeals of Georgia — 347 Ga. App. 6.

*Shannon G. Wallace, District Attorney, Zachary H. Smith, Cliff Head, Assistant District Attorneys*, for appellant.

*Bernard S. Brody*, for appellee.

*Layla H. Zon, District Attorney; Samuel R. d'Entremont, Assistant District Attorney; Robert W. Smith, Jr.*, amici curiae.