313 Ga. 236
FINAL COPY

S21A1249.  GRIER v. THE STATE.

BOGGS, Presiding Justice.

Appellant Deunta Grier challenges his 2016 convictions for malice murder and other crimes in connection with the shooting death of his girlfriend, Tiffany Bailey. Appellant contends that the evidence presented at his trial was insufficient to support his convictions, that the trial court committed plain error in admitting hearsay statements allegedly made by Bailey's five-year-old daughter, J. F., and the couple's three-year-old daughter, A. G., under the Child Hearsay Statute and in violation of Appellant's constitutional right of confrontation, and that he was denied the effective assistance of counsel. We affirm. [1]

---

[1] The crimes occurred on November 7, 2015. On February 16, 2016, a Fulton County grand jury indicted Appellant for malice murder, three counts of felony murder, aggravated assault with a deadly weapon, two counts of cruelty to children in the third degree, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony against the person of

1. The evidence at trial showed the following. In November 2015, Appellant lived in Bailey's apartment with J. F., A. G., and the couple's baby. Appellant and Bailey had been in a romantic relationship for several years, and J. F. often referred to Appellant as "Daddy." Appellant and Bailey had a tumultuous relationship that included hair-pulling and physical fights that left bruises on Bailey. Appellant's name was not on the lease, and the complex's property manager, Regina Brettnacher, told Bailey about a week before Bailey's murder that Appellant had to leave or Bailey would be evicted. Three days before the shooting, Bailey told her aunt that she planned to break up with Appellant. On November 7, Appellant

another by a person previously convicted of a felony involving the use or possession of a firearm. At a trial from June 27 to 30, 2016, the jury found Appellant guilty of all charges. The trial court sentenced Appellant to serve life in prison for malice murder, concurrent terms of 12 months each for the child cruelty counts, and 15 consecutive years for possession of a firearm during the commission of a felony against the person of another by a person previously convicted of a gun crime. The court vacated the felony murder counts and merged the remaining charges. On July 22, 2016, Appellant filed a motion for new trial, which he amended with new counsel on November 28, 2017. The court held an evidentiary hearing on April 10, 2018, and denied the motion on May 12, 2021. Appellant filed a timely notice of appeal. The case was docketed in this Court to the August 2021 term and was orally argued on November 10, 2021.

called 911 to report that Bailey had been shot. When officers and paramedics arrived, Appellant and the children were in the unit, and Bailey was unconscious on the floor of the kitchen with a gunshot wound through her eye. Bailey's earrings and clumps of her hair were scattered around the living room, and there was a suitcase packed with men's clothing in the kitchen. Bailey was transported to the hospital within 45 minutes of the 911 call and later pronounced dead.

Appellant agreed to go to the police precinct, where he was interviewed by Scott Berhalter, the lead detective on the case. In a video-recorded interview, which was played for the jury at trial, Appellant admitted that he sold drugs out of the apartment. According to Appellant, someone came to the apartment to buy marijuana, pointed a gun at Appellant, demanded marijuana, and then pulled the trigger, shooting Bailey when Appellant tried to disarm the shooter. Appellant claimed that the shooter was friends with 17-year-old Q. W., and that Q. W. and the shooter had purchased marijuana together from him a few days prior.

3

Appellant's description of the shooter led Detective Berhalter to 13-year-old A. N., but A. N. provided an alibi for the night of the shooting.[2] Appellant did not identify A. N. as the shooter when presented with a photographic lineup, instead identifying A. N. as someone who "should know who did this." Appellant admitted to recently firing a gun but claimed that he had only fired at a car hours before Bailey was shot. Appellant also admitted to owning .22-caliber ammunition, the type of bullet that killed Bailey.

Two days after the shooting, Appellant told an acquaintance, Isaac Turner, that he and Bailey were arguing, he pulled his gun in an attempt to get her off him, "the gun went off when she went towards him," and the bullet hit her in the head. Appellant added that he lied to the police about a robbery, staged the scene, and threw the gun over the fence of the apartment complex. Later that

---

[2] A. N. told Detective Berhalter that he was with his sister at the time of the shooting. At that time, A. N. and his sister were both under surveillance using GPS ankle monitors, and GPS information showed that A. N.'s sister was on a different side of town at the time of the shooting. A. N.'s ankle monitor was not charged and thus was not active the night of the shooting, but he was seemingly unaware of this fact, as A. N.'s probation officer stated that "as far as [A. N.] knew[,] he was being monitored 24/7."

4

day, Brettnacher saw Appellant searching for something along the fence line. The police returned to the complex, and a canine searched along the fence line but did not find a gun. The police could tell that the area had been recently searched.

At trial, the State did not call A. G. as a witness. J. F., who was six at the time of the trial, testified by closed-circuit television from elsewhere in the courthouse.[3] J. F. was asked if she "said that [her] daddy killed [her mom]," and J. F. nodded her head up and down. J. F. was asked if she was there when that happened, and she again nodded her head up and down. When J. F. was asked if she saw it happen, she shook her head from side to side. J. F.'s answers to many of the State's questions were nonverbal gestures or verbal responses that were not audible in the courtroom. On cross-examination, J. F. answered only two questions audibly[4] before providing only nonverbal responses to questions from Appellant's

---

[3] Appellant does not present any challenge to the use of closed-circuit television to present this testimony.

[4] She was asked, "[H]ow you doing?" and responded, "Good." She was then asked, "You okay? My name is Mr. Marks, okay?" and responded, "Okay."

trial counsel. Appellant's counsel then said that he was not going to ask her any more questions about her "mommy and daddy." Appellant's counsel proceeded to ask J. F. several questions about her favorite dessert, school, and watching television, which she answered by nodding or shaking her head.

Susan Paa, the Director of Forensic Services for the Fulton County District Attorney's Office, testified that she interviewed J. F. and A. G. the week before trial. According to Paa, J. F. said that "her dad had shot her mom," and A. G. said that "her dad had killed her mom." J. F. said that she was asleep in her mom's bedroom with her sisters; that her mom and Appellant were arguing in the living room; that she went into the living room; that her mom pushed Appellant out of a chair; and that Appellant got his gun off the couch and shot her mom in the eye.[5] Veronica Delmar, Bailey's cousin, testified that "probably the night" of the shooting, J. F. said that "she

---

[5] On cross-examination, Paa testified that Tamara Glover, a forensic interviewer, interviewed J. F. on the day of the shooting; that J. F. initially told Glover that her daddy did not shoot her mom; and that Paa's recollection was that J. F. later said otherwise to Glover.

saw them arguing and stuff and saw her daddy . . . pull out a gun and shoot mommy and put them in a room, stuff like that." Brettnacher testified that assistant property manager Charlsella Jackson called her from Bailey's apartment immediately after the shooting while the paramedics were still working on Bailey. According to Brettnacher, Jackson said, in an excited state, that Bailey had been shot, that Appellant was sitting in a police car, and that "the little girl [J. F.] just came up to me and said daddy shot mommy."[6] Detective Berhalter did not testify to any out-of-court statements by J. F. or A. G. However, the jury saw the recording of his interview of Appellant, in which Detective Berhalter said, "from what I am being told, okay, is that your five-year-old and two-year-old [sic] are saying that you and [Bailey] were fighting, okay, and during that fight you shot her." The detective also questioned Appellant as to why the girls were "saying that Daddy is responsible for this."

---

[6] Appellant made a Confrontation Clause objection to Brettnacher's testimony. The State responded, "It's non-testimonial, excited utterance," and the trial court overruled the objection.

The parties entered into several stipulations that were read to the jury. Among other things, the parties stipulated that Appellant was a convicted felon on the date of the shooting, that he was in possession of a .22-caliber revolver during an arrest in 2007, and that he was arrested on March 6, 2015, for possession of a firearm by a convicted felon.

Appellant did not testify at trial. He called one witness, Ameer Davis, who lived at the apartment complex and worked there as a security guard. Davis testified that on the day of the shooting, he heard what he believed to be a gunshot, and a minute or two later he saw a young black male walk out of Bailey's building. Davis also testified that he chased after the young man but lost him, and that Appellant was in Bailey's unit when Davis went back to the building. According to Davis, Appellant said, "they just tried to rob me." Davis further testified that he was familiar with Appellant and Bailey from many interactions prior to the date of the shooting, that he never saw Appellant and Bailey arguing or fighting, and that he never had to respond to Bailey's unit for any type of complaint. The

defense's theory was that a young man came to Bailey's apartment under the pretense of buying marijuana and shot Bailey during an attempted robbery.

2. Appellant contends that without the child hearsay testimony, which he argues was erroneously admitted, the evidence was legally insufficient to support his convictions. However, in determining the sufficiency of the evidence, we consider all of the evidence that was admitted at trial, even if evidence should have been excluded. See *McGarity v. State*, 311 Ga. 158, 161 (1) (856 SE2d 241) (2021). See also *Davenport v. State*, 309 Ga. 385, 397 (4) (b) (846 SE2d 83) (2020) ("[W]e consider *all* the evidence admitted at trial, regardless of whether the trial court erred in admitting some of that evidence." (emphasis in original)). After reviewing the evidence admitted at trial in the light most favorable to the verdict, we conclude that the evidence was more than sufficient to support the charges upon which Appellant was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Accordingly, this enumeration of error lacks merit.

3. Appellant contends that the trial court erred in admitting hearsay statements by J. F. and A. G. under the Child Hearsay Statute and, as to Paa's testimony about A. G.'s statement, in violation of his right of confrontation protected by the Georgia and United States Constitutions. Appellant did not object to this testimony on these grounds at trial, so we review his claims only for plain error. See OCGA § 24-1-103 (d); *Kemp v. State*, 303 Ga. 385, 397-398 (3) (810 SE2d 515) (2018) (applying plain error review to Confrontation Clause claim raised for first time on appeal); *Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016) (applying plain error review to hearsay claim raised for first time on appeal). To establish plain error, Appellant

> must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Lupoe*, 300 Ga. at 243 (4) (citation and punctuation omitted). Appellant did not affirmatively waive any of the claimed errors, and

it was clear error to admit one bit of the testimony. Appellant has not established plain error, however, because he has not shown that the single clear error in admitting child hearsay testimony affected his substantial rights.

(a) *Paa's testimony about A. G.'s statement.* It was clear error to admit Paa's testimony that A. G. said that "her dad had killed her mom." "The Confrontation Clause 'imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant.'" *McCord v. State*, 305 Ga. 318, 321 (2) (825 SE2d 122) (2019) (citation and footnote omitted). See also *Crawford v. Washington*, 541 U.S. 36, 68 (V) (C) (124 SCt 1354, 158 LE2d 177) (2004). A. G.'s statement to Paa was testimonial, as Paa worked for the Fulton County District Attorney's Office and the statement was made in an interview of A. G. conducted by Paa a week before trial for the purpose of gathering evidence for use at trial. See *Lindsey v. State*, 282 Ga. 447, 452 (4) (651 SE2d 66) (2007) (citing *Jenkins v. State*, 278 Ga. 598, 605 (2)

11

(604 SE2d 789) (2004), and holding that testimonial statements under *Crawford* include statements made by witnesses to government officers investigating a crime). A. G. did not testify at trial, and Appellant had no prior opportunity to cross-examine A. G. about her statement. Thus, Paa's testimony about A. G.'s statement clearly should have been excluded under the Confrontation Clause. See *Crawford*, 541 U.S. at 53-54 (III) (B) ("[T]he Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.").

(b) *Paa's testimony about J. F.'s statement.* It was not clear and obvious error to admit Paa's testimony that J. F. said that Appellant shot Bailey during an argument, as this testimony satisfied the requirements of the Child Hearsay Statute. At the time of Appellant's trial, the Child Hearsay Statute provided:

> A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to

12

whom made if the proponent of such statement provides notice to the adverse party prior to the trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

OCGA § 24-8-820 (2013).[7] Appellant argues that Paa's testimony about J. F.'s statement was inadmissible for three unconvincing reasons.

First, Appellant argues that the Child Hearsay Statute does not apply because a shooting does not constitute "physical abuse" within the meaning of the statute. "For an error to be obvious for purposes of plain error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." *Cheddersingh v. State,* 290 Ga. 680, 685 (2) n.5 (724 SE2d 366) (2012) (cleaned up). Further, whether an error is considered "clear or obvious" is evaluated "based on the state of the law as it exists at

---

[7] The Child Hearsay Statute was amended in 2019. This same language now appears in OCGA § 24-8-820 (a).

the time of [appellate] review." *Lyman v. State*, 301 Ga. 312, 317 (2) (800 SE2d 333) (2017). Appellant cannot point to any precedent from this Court that holds that a shooting that causes injury does not constitute "physical abuse" under the statute, and it is not unequivocally clear from the words of the Child Hearsay Statute that such a shooting does not qualify as physical abuse. Thus, Appellant's first argument fails.

Second, Appellant argues that the State failed to provide sufficient notice of Paa's testimony about J. F.'s statement. The Child Hearsay Statute requires the proponent of child hearsay testimony to "provide[ ] notice to the adverse party prior to the trial of the intention to use *such out-of-court statement*." OCGA § 24-8-820 (a) (emphasis added). The State did not provide any notice of its intent to present child hearsay from Paa. However, absent a showing of prejudice to the defendant and bad faith by the State, the ordinary remedy for failure to comply with a requirement that a witness must be identified prior to trial is simply a continuance to allow for an interview of the witness, and we assume that the trial

14

court would have followed the law if an objection to notice had been made. See *Massey v. State*, 272 Ga. 50, 51 (4) (525 SE2d 694) (2000). Because the exclusion of Paa's testimony about J. F.'s statement would not have been required had Appellant's counsel objected to the lack of proper notice, Appellant has not satisfied his burden in showing clear error. Cf. *Lee v. Smith*, 307 Ga. 815, 821-822 (2) (838 SE2d 870) (2020) (holding that trial court abused its discretion by excluding a witness solely due to late identification). Accordingly, Appellant's second argument fails.

Finally, Appellant argues that J. F. did not actually "testify" at trial as required by the Child Hearsay Statute, because most of her responses were nonverbal, so Paa's testimony about J. F.'s statement was inadmissible. But J. F. did testify at trial, was cross-examined, and provided responses to many of the questions asked to her. That defense counsel willingly abandoned his case-related questioning of J. F. after she provided nonverbal responses to some of the State's questions does not mean she did not "testify" as required by the Child Hearsay Statute. Compare *Soto v. State*, 285

Ga. 367, 368-369 (2) (677 SE2d 95) (2009) (holding that the defendant did not have an opportunity to cross-examine a witness when the witness refused to answer questions altogether). Accordingly, Appellant's final argument fails.

(c) *Delmar's testimony*. It was not clear error to admit Delmar's testimony that J. F. said that she saw Appellant pull out a gun and shoot Bailey during an argument. Appellant again argues that the testimony should have been excluded because a shooting does not constitute "physical abuse," J. F. did not actually "testify," and proper notice was not provided, but these arguments fail for the reasons discussed above. Moreover, a report of J. F.'s statement to Delmar was included in discovery provided to Appellant, so there is no indication that he was surprised by the testimony.

Appellant also argues that Delmar's testimony about J. F.'s statement should have been excluded because there was no evidence that J. F. made the statement directly to Delmar. But Delmar testified that the statement was made to her alongside other family members, and nothing in the Child Hearsay Statute precludes the

16

admission of a statement simply because it was made to multiple people simultaneously. The evidence shows that Delmar was an original recipient of J. F.'s statement, so this argument also fails.

(d) *Brettnacher's testimony.* The trial court did not err, much less commit plain error, in admitting Brettnacher's testimony that J. F. told Jackson that "daddy shot mommy," because both Jackson's statement to Brettnacher and J. F.'s statement to Jackson were admissible as excited utterances. See OCGA § 24-8-805 ("Hearsay included within hearsay shall not be excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule.").

Under OCGA § 24-8-803 (2), regardless of whether the declarant is available as a witness, otherwise inadmissible hearsay can be admissible as an excited utterance when the "statement [is related] to a startling event or condition made while the declarant was *under the stress of excitement caused by the event or condition*[.]" (Emphasis added.) Brettnacher testified that Jackson was in an "excited" state when she called from Appellant and Bailey's

17

apartment shortly after the shooting and told Brettnacher that J. F. said that "daddy shot mommy." And while there was no direct testimony that J. F. was under the stress of excitement caused by the shooting when she told Jackson that "daddy shot mommy," the trial court could have reasonably concluded from the circumstances that J. F. was in such a state when she made the statement to Jackson. See *Robbins v. State*, 300 Ga. 387, 390 (2) (793 SE2d 62) (2016) (holding that whether a hearsay statement was an excited utterance is determined not by one single factor, but the "totality of the circumstances"). J. F.'s testimony indicated that she was in the apartment when the shooting occurred and, according to Brettnacher, the paramedics were still trying to resuscitate J. F.'s mother Bailey when Jackson called Brettnacher from the apartment and relayed what J. F. said to Jackson. Thus, the circumstances indicate that this statement was made close in time to the shooting. Accordingly, J. F.'s statement to Jackson, which Jackson relayed to Brettnacher, was admissible. See *Jackson v. State*, 311 Ga. 626, 631-632 (3) (859 SE2d 46) (2021) (holding that trial court did not abuse

18

its discretion when it allowed hearsay testimony as an excited utterance from a witness who was inside a house at the time of a shooting and heard, but did not physically see, the shooting).

(e) *Detective Berhalter's interview of Appellant.* Finally, it was not clear legal error to admit the part of the recording of Detective Berhalter's interview with Appellant where Detective Berhalter referenced statements by J. F. and A. G. that Appellant shot Bailey during a fight and that he was responsible for the shooting, as the statements were not hearsay. See OCGA § 24-8-801 (c) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). "[T]he detective's statements were clearly not meant to establish as true that the others had implicated Appellant, but were simply a part of an interrogation technique." *Myrick v. State*, 306 Ga. 894, 901 (3) (b) (834 SE2d 542) (2019) (citation and punctuation omitted). "What [Detective Berhalter] asked of or said to [Appellant] during interrogation was not offered for its truth, but rather to establish what questions or

statements [Appellant] was responding to and the effect the former had on [Appellant] as the listener." Id. (citation and punctuation omitted). Because Detective Berhalter's recorded statements were not hearsay, the trial court did not clearly err in admitting them.

(f) *Substantial rights.* The trial court's single error did not affect Appellant's substantial rights. The erroneous admission of Paa's testimony recounting A. G.'s brief statement did not give rise to a reasonable probability that the outcome of the trial would have been different. See *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013) (holding that under plain error analysis, the defendant must show that the trial court's errors "probably affected the verdict"). While Appellant claims that Bailey was shot by an unidentified person attempting to rob Appellant of his marijuana, his description of the shooter led the police to a 13-year-old with an alibi whom Appellant himself identified as not being the shooter during a photographic lineup. Further, the other evidence of Appellant's guilt was strong. J. F. indicated at trial that she was present when the shooting happened and that Appellant shot

20

Bailey. Moreover, there was evidence of motive; Appellant admitted to Turner that he shot Bailey; and Brettnacher, Delmar, and Paa testified that J. F. said that Appellant shot Bailey during an argument. Appellant has not met his burden under the plain error standard to show a reasonable probability that the outcome would have been different, as the improperly admitted hearsay was merely duplicative of other properly admitted evidence. See *Allen v. State*, 310 Ga. 411, 417 (3) (851 SE2d 541) (2020) (holding that defendant failed to demonstrate plain error from improperly admitted hearsay where properly admitted evidence of defendant's guilt was strong); see also *Anglin v. State*, 302 Ga. 333, 336 (2) (806 SE2d 573) (2017) ("[T]he erroneous admission of hearsay is harmless where substantial, cumulative, legally admissible evidence of the same fact is introduced.").

4. Appellant contends that trial counsel was ineffective in failing to object to each of the aforementioned hearsay issues. To prevail on this claim, Appellant must prove both deficient performance by his counsel and resulting prejudice. See *Strickland*

*v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, he must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). This requires Appellant to "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015) (citation and punctuation omitted). And to establish prejudice, Appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). We need not address both components of the inquiry if a defendant makes an insufficient showing on one. See id. at 697 (IV).

First, Appellant has not shown that trial counsel was deficient

in failing to object to Detective Berhalter's and Brettnacher's testimony. Detective Berhalter's testimony was admissible nonhearsay, and Brettnacher's testimony was admissible under the hearsay exception for excited utterances. See *Harris v. State*, 304 Ga. 652, 658 (2) (c) (821 SE2d 346) (2018) ("[F]ailure to make a meritless objection cannot support a claim of ineffective assistance." (citation and punctuation omitted)).

Further, while an objection to Delmar's and Paa's testimony about J. F.'s statements for lack of notice might have been sustained, the trial court would not have excluded Delmar or Paa from testifying on that basis. See *Massey*, 272 Ga. at 51 (4). Such an objection would thus have had no effect on the trial's outcome. And even if we assume that trial counsel performed deficiently by failing to object to Paa's testimony about A. G.'s statement, "the test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review." *Griffin v. State*, 311 Ga. 579, 584-585 (3) (858 SE2d 688) (2021) (citation and punctuation omitted). As set forth in Division 3 (f), Appellant has not made a

23

sufficient showing of prejudice from the admission of this one piece of hearsay. Accordingly, Appellant's ineffective assistance of counsel claim fails.

*Judgment affirmed. All the Justices concur.*

Decided February 15, 2022.

Murder. Fulton Superior Court. Before Judge Glanville.

*Smith Gambrell & Russell, Edward H. Wasmuth, Jr.,* for

appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Sr., F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, William C. Enfinger, Assistant Attorney General*, for appellee.