**SECOND DIVISION**
**DOYLE, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2025**

# In the Court of Appeals of Georgia

A25A1307. JACKSON v. THE STATE.

DAVIS, Judge.

A Clayton County jury found Alexander Jackson Jr. guilty of statutory rape and child molestation. Jackson appeals from the denial of his motion for new trial, arguing that (1) the evidence was insufficient to sustain his convictions for statutory rape due to the lack of corroborating evidence; (2) the trial court violated his right to be present; (3) the trial court violated his right to confront, cross-examine, and impeach the victim; (4) the trial court violated his due process rights; (5) the trial court erred by excluding certain relevant evidence; (6) the trial court plainly erred by admitting inadmissible child hearsay testimony; (7) the cumulative effect of the errors warrants a new trial; and (8) the trial court imposed an unlawful sentence. For the reasons that

follow, we vacate Jackson's sentence and remand the case to the trial court to merge the statutory rape convictions and to resentence him for only one statutory rape conviction. We otherwise affirm the trial court's denial of Jackson's motion for new trial.

Viewed in the light most favorable to the jury's verdict,[1] the evidence presented at trial shows the following. S. S. lived with her parents and siblings on Appaloosa Run in Clayton County, Georgia, and Jackson and his family lived across the street from her home. The two families were friends and often visited each other, and their children would sleep over at each other's homes. In December 2010, when S. S. was 12 years old, Jackson "touch[ed] [her] butt" as she lay on a couch at Jackson's home. A couple of weeks later, S. S. was at Jackson's home, and he would not let her leave until she kissed him on his lips. She also testified that in January 2011, Jackson "fondl[ed] . . . [her] private areas" under her clothes as she lay on a couch in his basement.

One evening in March 2011, S. S. was at Jackson's home while her parents attended a concert. S. S. was by herself in the basement as the other children got ready

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

for bed when Jackson entered the basement, sat with her on a couch, and caressed her thigh. Jackson then "play[ed] with his private area," took off her clothes,"stuck his private" in her and "penetrated a couple of times." Jackson told her that "[she] better not tell anybody." At some point, Jackson, whose home faced S. S.'s bedroom, sent text messages to S. S. asking her to call him and instructing her to "open [her] blinds."[2] S. S. testified that she knew that it was Jackson who sent her the text message because her parents had given her his number in case of an emergency. According to S. S., Jackson had penetrated her "probably more than five times" on separate occasions after the March 2011 incident. The last incident occurred in May 2014. S. S. testified she was asleep on the couch in Jackson's home and that he woke her up and had sex with her.

S. S. made an outcry to one of her sisters, N. S., who also testified that Jackson grabbed her buttocks while she was at his home in the summer of 2013.[3] S. S. made

---

[2] Exhibits of the text messages were entered into evidence.

[3] This testimony was admitted as other act evidence under OCGA § 24-4-413.

other outcry statements to one of her classmates, M. B., and to her mother. S. S.'s mother took her to the police, and a forensic interview with S. S. was conducted.[4]

Jackson was indicted on two counts of statutory rape (OCGA § 16-6-3 (a)), three counts of child molestation (OCGA § 16-6-4 (a)), and one count of sexual battery (OCGA § 16-6-22.1 (b)).[5] The case proceeded to a jury trial, but a mistrial was declared after the jury was unable to reach a verdict. After the retrial, Jackson was acquitted of one of the child molestation counts, but he was found guilty of the remaining offenses. The trial court imposed a 20-year sentence for one count of statutory rape, and a 20-year sentence on the other statutory rape count, which was to run consecutively from the other count.[6] For the second statutory rape count, the first 19 years were to be served in confinement and the balance was to be served on probation. Jackson filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

---

[4] The video of the interview was not entered into evidence.

[5] The sexual battery charge was later dismissed.

[6] The trial court also merged Jackson's convictions for child molestation into the two statutory rape convictions for sentencing purposes.

4

1. First, Jackson argues that the evidence was insufficient to sustain his convictions for statutory rape because S. S.'s testimony was not sufficiently corroborated. We disagree and conclude that S. S.'s testimony was sufficiently corroborated to sustain his convictions for statutory rape.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.

(Citation omitted.) *Johnson v. State*, 367 Ga. App. 344 (886 SE2d 5) (2023).

Under OCGA § 16-6-3 (a) (2006),[7] "[a] person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for

---

[7] "[A] crime is to be construed and punished according to the provisions of the law existing at the time of its commission." (Citation omitted.) *Torres v. State*, 361 Ga. App. 149, 154 (3) (863 SE2d 399) (2021).

this offense on the unsupported testimony of the victim." Thus, to sustain a conviction for statutory rape, "the State must present some evidence to corroborate the victim's testimony that the defendant committed statutory rape." *Quantanilla-Solis v. State*, 367 Ga. App. 397, 399 (1) (885 SE2d 323) (2023). The Supreme Court of Georgia has explained that corroborating evidence is

> evidence that differs from but strengthens or confirms what other evidence shows (esp. that which needs support). The value of a prior consistent statement is that it does not differ from a subsequent statement. The consistency of a prior statement of the statutory rape victim makes a subsequent statement that contains the same details more believable. On the other hand, corroborating evidence earns its value because it is independent from the victim's statement. It is evidence from an independent source that supports the conclusion that the defendant committed the statutory rape of the victim.

(Citation, punctuation, and emphasis omitted.) *Atkins v. State*, 304 Ga. 240, 244 (2) (818 SE2d 567) (2018). Under this construct, it is true, as Jackson points out, that "a victim's prior consistent statement cannot provide the required corroborating evidence for [a defendant]'s conviction for statutory rape[.]" Id. at 245 (2). Still, it is well settled that "[s]ufficient corroborating evidence may be circumstantial, [and] it may be slight." (Citation omitted.) Id. at 244 (2) n.1. Indeed,

6

it is not necessary that the child be corroborated as to every essential element of the crime, or that it establish the defendant's guilt. Moreover, the quantum of corroboration needed is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration, and ultimately the question of corroboration is one for the jury.

(Citation and punctuation omitted.) *Sanchez v. State*, 316 Ga. App. 40, 41 (1) (728 SE2d 718) (2012). Moreover, "[e]vidence of an accused's conduct before and after the crime was committed may give rise to an inference that he participated in the crime." *Atkins*, supra, 304 Ga. at 244 (2) n.1. And "physical findings corroborating the victim's testimony are not necessary to sustain a conviction of statutory rape." (Citation omitted.) *Garner v. State*, 346 Ga. App. 351, 355 (1) (816 SE2d 368) (2018).

Here, Counts 1 and 3 alleged that on or about March 21, 2011 and May 14, 2014, Jackson committed statutory rape in that he "did engage in sexual intercourse with [S. S.], a person under 16 years of age and not being the spouse of the accused[.]" S. S. testified that in March 2011, when she was 12 or 13 years old, Jackson walked into the basement of his home where she was, caressed her leg, and penetrated her "private"

with his "private." S. S. also testified that in May 2014, when she was 15 years old, Jackson again "had sex" with her at his home.

We conclude that S. S.'s testimony was sufficiently corroborated to sustain Jackson's convictions for statutory rape. Setting aside S. S.'s outcries to her mother, sister, friends, and a forensic interviewer, which cannot serve as corroborating evidence under *Atkins*, the State presented other evidence that corroborated S. S.'s testimony. As recounted above, Jackson, whose home faced S. S.'s bedroom, sent multiple text messages to S. S., including one telling her to "open [her] blinds," and S. S. testified that the message came from Jackson's number because it was the same number that was given to her from her parents to use in the event of an emergency. Although it is slight evidence, we conclude that this text message is of such a character and quality as to show that a sexual encounter had occurred between Jackson and S. S. Moreover, N. S., the victim's sister, testified that Jackson grabbed her buttocks while she was at his home. The trial court admitted N. S.'s testimony under OCGA § 24-4-413 (a), which provides that "[i]n a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be consider for its

bearing on *any matter* to which it is relevant." (Emphasis supplied.) OCGA § 24-4-413 (a). In light of the text messages and N. S.'s testimony, which could be considered for its bearing on any relevant matter under OCGA § 24-4-413 (a), we conclude that S. S.'s testimony was sufficiently corroborated to sustain Jackson's conviction for statutory rape. See *Lewis v. State*, 275 Ga. App. 41, 42-43 (2) (a) (619 SE2d 699) (2005) (stating under the old Evidence Code that "in cases of sexual abuse of children, evidence of prior sexual acts performed on other children is admissible to show the lustful disposition of the defendant toward children, and, because there is seldom a competent witness other than the victim to what occurred, to corroborate testimony of the victim as to the acts charged."); compare *Atkins*, supra, 304 Ga. at 244-245 (2) (reversing the defendant's conviction for statutory rape where, aside from the victim's testimony and outcry statements, the State's evidence only showed that the victim visited the defendant's home and therefore was not of "such character and quality as tends to prove" the defendant's guilt).

2. Second, Jackson argues that the trial court violated his right to be present during a critical stage of the proceedings when it held a pre-trial hearing concerning

the State's motions in limine to exclude evidence without his presence. We conclude that Jackson has failed to show that his right to be present was violated.

> The United States and Georgia Constitutions both secure the fundamental right of criminal defendants to be present at all critical stages of the proceedings against them. . . . A violation of the Georgia Constitution's right to be present is presumed to be prejudicial. Thus, absent a valid waiver by the defendant, a violation of the right to be present enshrined in the Georgia Constitution triggers reversal and remand for a new trial whenever the issue is properly raised on direct appeal.

(Citations omitted.) *Casas v. State*, 368 Ga. App. 434, 436 (1) (890 SE2d 308) (2023). We have defined a "critical stage" of a criminal proceeding as "one in which the defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." (Citation omitted.) Id. But "the constitutional right to be present is not violated when the defendant's absence occurs during conferences addressing legal matters to which the defendant cannot make a meaningful contribution." *Campbell v. State*, 292 Ga. 766, 770 (4) (740 SE2d 115) (2013). Indeed, "pre-trial hearings and bench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury

instructions, ordinarily do not implicate the right to be present." *Brewer v. State*, 302 Ga. 6, 10 (II) (804 SE2d 94) (2017).

We conclude that the trial court did not violate Jackson's right to be present by holding a pre-trial hearing without his presence. As Jackson acknowledges, the hearing involved legal matters regarding the admissibility of certain police reports, statements made by S. S., and prior allegations of sexual abuse by S. S.'s mother and aunt. Consequently, Jackson's right to be present was not implicated at this hearing and therefore this enumeration of error fails. See *Campbell*, supra, 292 Ga. at 770 (4) (defendant's right to be present was not violated when the trial court held a pre-trial hearing without the defendant's presence on the State's motion in limine to exclude examination of a witness on a particular issue).

3. Next, in two related claims, Jackson argues that the trial court violated his constitutional right to cross-examine and impeach S. S. regarding her statements about losing her virginity because the evidence was not barred by the Rape Shield Statute. Again, we disagree.

"The trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." (Citation omitted.) *Priddy v. State*, 362 Ga. App. 434, 437 (2) (868 SE2d 831) (2022).

> The Sixth Amendment includes a compact statement of the rights necessary to a full defense: In all criminal prosecutions, the accused shall enjoy the right to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

(Citation and punctuation omitted.) *State v. Burns*, 306 Ga. 117, 121 (2) (829 SE2d 367) (2019). Regarding the right to confrontation, "the Sixth Amendment provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." (Citation and punctuation omitted.) Id. But "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Citation omitted; emphasis within the original.) Id. In this same vein, the Supreme Court of Georgia has been clear that "the accused, as is required of the State, must comply with established rules

of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (Citation omitted.) Id. at 122 (2).

One such evidentiary rule is Georgia's Rape Shield statute, which "has been part of Georgia law since 1976." *Burns*, supra, 306 Ga. at 120 (2). The version of the statute applicable to this case provided in part:

> In any prosecution for . . . statutory rape in violation of Code Section 16-6-3 . . . evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.

OCGA § 24-4-412 (a) (2018).[8] The only exception permitted by the statute provided that

> [e]vidence relating to the past sexual behavior of the complaining witness may be introduced if the court . . . finds that the past sexual behavior

---

[8] OCGA § 24-4-412 was revised by the General Assembly, effective July 29, 2020. See Ga. L. 2020, p. 493, § 24. Thus, the revised statute, which Jackson partially relies upon in his brief, does not apply here.

directly involved the participation of the accused and finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution.

OCGA § 24-4-412 (b) (2018). Thus, we have been clear that under the plain language of this statute, "evidence of a complaining witness's past sexual behavior was admissible only if the behavior directly involved the defendant and was relevant to the issue of consent. There was no other exception to the evidentiary restrictions of the Rape Shield Statute." (Citation omitted.) *Priddy*, supra, 362 Ga. App. at 438 (2).

Here, S. S. testified that she "lost [her] virginity" to Jackson as a result of the March 2011 incident. Jackson made the following argument to the trial court in response to S. S.'s testimony:

One of the pieces of evidence that we sought to admit was the statement of one of the [victim]'s friends. Well, not the statement itself, but the testimony from that statement regarding statements from the witness that her virginity was taken by another person, on specific dates.

That evidence was previously provided to the State. And so the [d]efense in their case would like the opportunity to be able to call those witnesses as rebuttal witnesses, regarding the loss of her virginity.

14

Jackson further argued:

> Your Honor, I understand about Rape Shield and what it protects. But if the witness calls into issue something that would open her up to scrutiny for veracity, I believe that in all interest of fairness that we should be able to explore that issue.
>
> And if she's telling other individuals that her virginity was taken by someone else, it's not a hearsay issue if I had that person here to -- stating exactly what the witness told her, not what she's hearing from someone else.

Applying the aforementioned principles here, we conclude that the trial court did not abuse its discretion by prohibiting Jackson from presenting evidence or eliciting testimony from S. S. as to whether she made statements indicating that she lost her virginity to someone else. Based on Jackson's arguments below, it is clear that Jackson was, in essence, asking to conduct a "fishing expedition" as to whether S. S. had other sexual partners, which is not permitted under the Rape Shield Statute. See *Atkins*, 304 Ga. at 246-249 (3) (trial court did not abuse its discretion by prohibiting the defendant from questioning the victim about the identity of the father of the

victim's child because it was apparent that defendant merely sought to question the victim about all of her prior sexual partners).[9]

We reject Jackson's claim that the Supreme Court of Georgia's decision in *Villafranco v. State*, 252 Ga. 188 (313 SE2d 469) (1984), requires a different result in this case. In *Villafranco*, the defendant was charged with rape and sought to present evidence that shortly before the incident, the victim told someone that she wanted to go to a party where the defendant was "to get some nookey." Id. at 193 (1). In reversing the trial court's order excluding the evidence, the Court reasoned that the statement was not evidence of the victim's "past sexual behavior" but was relevant to show the victim's motive and state of mind at the time of the offense because it was

---

[9] And to the extent that Jackson argues that the evidence was admissible under OCGA § 24-8-803 (21) (reputation of character among the community) and OCGA § 24-6-608 (witness credibility), this argument fails. First, Jackson did not argue below that the evidence was admissible under those statutes. Second, the evidence was not admissible under those statutes. The alleged prior inconsistent statements fall outside the purview of OCGA § 24-8-803 (21) because the statements did not concern S. S.'s reputation among the community. See OCGA § 24-8-803 (21) (statements regarding the "[r]eputation of a person's character among associates or in the community are not excluded by the hearsay rule."). Although Jackson argues that the evidence was admissible under OCGA § 24-6-608 to show that S. S. "had a reputation in the community for lying," we have been clear that under OCGA § 24-6-608, "there remains an absolute bar on extrinsic evidence offered solely to prove the witness's general character for veracity." *Page v. State*, 372 Ga. App. 128, 131 (1) (903 SE2d 815) (2024).

evidence that the victim had acted amorously *toward the defendant*. Id. at 193-194 (1). Here, however, the alleged evidence that S. S. "lost [her] virginity" to someone else was not evidence of S. S.'s state of mind at the time of the offense, nor did it have any bearing on the issue of consent, especially since consent is not a defense to statutory rape. See *Arroyo v. State*, 372 Ga. App. 366, 371 (1) (903 SE2d 712) (2024) ("Considerations of 'consent' and 'force' and 'against her will' are irrelevant in a statutory rape case[.]") (citation omitted). Consequently, *Villafranco* is distinguishable from the instant case, and for the reasons stated above, the trial court did not abuse its discretion by prohibiting Jackson from cross-examining or impeaching S. S. about the alleged statements.

4. Jackson also argues that his due process rights under *Napue v. Illinois*, 360 U. S. 264, 269 (79 SCt 1173, 3 LE2d 1217) (1959), were violated when the State elicited false testimony or failed to correct false testimony from S. S. that Jackson was the only person who could have asked her to open the blinds of her window. This claim, however, was not preserved for appellate review.

At trial, S. S. testified that she received a text message from a then-unidentified number in which the individual asked her to "open [her] blinds." When asked how

she knew at the time it was Jackson who sent her the text message, S. S. answered: "Because I always had my blinds open, and that's all he sees. I just knew. And I didn't really have friends, you know. Besides them, I didn't even have friends in my neighborhood, any body to come — tell me open my blinds or anything." S. S. also testified that although she did not have Jackson's phone number initially, she confirmed that the number belonged to Jackson after her parents had given her his number in case of an emergency. Jackson, however, did not object to this testimony on the basis that his due process rights were violated due to the alleged false testimony, and thus this claim was not preserved for appellate review.[10] See *Davis v. State*, 316 Ga. 418, 424-425 (4) (b) (888 SE2d 546) (2023) (declining to review the defendant's claim that his due process rights were violated under *Napue* where the defendant failed to object during trial on that basis).

---

[10] Notably, even if this claim had been preserved for appellate review, Jackson cannot show that the State elicited false testimony or failed to correct false testimony because in context, it is clear that S. S. had merely expressed her opinion or belief that Jackson sent the text message. See *Washington v. Hopson*, 299 Ga. 358, 363 (2) (a) (788 SE2d 362) (2016) (explaining that to establish a due process violation claim under *Napue*, "the defendant must establish that (1) *the contested statements were actually false*, (2) the government knew the statements to be false, and (3) the statements were material.") (citation and punctuation omitted; emphasis supplied). In any event, S. S. testified that the text message came from Jackson's number because her parents had given her his number to use in the event of an emergency.

5. Jackson further argues that the trial court erred by excluding certain relevant evidence, namely evidence that: (1) S. S.'s friends and another acquaintance had been to S. S.'s home and were capable of sending her text messages; and (2) S. S.'s mother and aunt had both been sexually assaulted. We conclude that Jackson has failed to show that the trial court abused its discretion in this regard.

OCGA § 24-4-402 provides: "All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible." OCGA § 24-4-401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "And while our Supreme Court has held that the relevance standard codified by these statutes is a forgiving one, it is not limitless." *Morris v. State*, 341 Ga. App. 568, 571 (1) (802 SE2d 13) (2017). Indeed,

> relevant evidence may be excluded under OCGA § 24-4-403 ("Rule 403") if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by

19

considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

(Citation and punctuation omitted.) *Thrift v. State*, 310 Ga. 499, 507 (5) (852 SE2d 560) (2020). In the end, "questions of relevance are within the sound discretion of the trial court, and absent a clear abuse of discretion, a court's decision to exclude evidence on the grounds of a lack of relevance will not be disturbed on appeal." (Citation and punctuation omitted.) *State v. Stephens*, 310 Ga. 57, 59 (1) (849 SE2d 459) (2020). With these principles in mind, we examine each piece of evidence that Jackson contends was wrongly excluded from trial.

(a) *S. S.'s Friends and an Acquaintance*. During a proffer at trial, S. S. acknowledged that at some point, her friends and another acquaintance had visited her home. Jackson argues that this evidence was relevant to show that other individuals could have sent the text message instructing her to open her blinds. But S. S. specifically testified that none of her friends sent her the text messages. And as stated above, she also testified that she confirmed that the text message came from Jackson after she received his phone number from her parents. In light of this testimony, we

cannot say that the trial court clearly abused its discretion by excluding the evidence about S. S. friends and another acquaintance from trial.

(b) *S. S.'s Mother and Aunt's History of Sexual Abuse*. Jackson sought to present evidence that S. S.'s mother and aunt had been sexually abused. Jackson argued that, although those incidents did not involve him, the evidence was relevant because it could support his theory that S. S.'s mother and aunt had pressured S. S. into making allegations against him.[11] "But there is no logical link between the fact that the victim had [relatives] who also claimed to be [victims] of sexual abuse and a conclusion that the victim might therefore be an unreliable witness whose testimony regarding [Jackson's] actions was not worthy of belief[,]" and thus the trial court did not abuse its discretion by excluding the evidence. (Citation and punctuation omitted.) *Morris*, supra, 341 Ga. App. at 572 (1) (affirming trial court's ruling excluding evidence that the victim's father was sexually abused because the evidence was not relevant).

6. Jackson also argues that the trial court erred by admitting into evidence statements that S. S. made to her mother, N. S., M. B., and the forensic interviewer

---

[11] Although the trial court initially excluded this evidence under the Rape Shield Statute, the court later ruled that the evidence was inadmissible on relevance grounds.

because the statements did not fall within the Child Hearsay Statute. Jackson, however, has failed to show reversible error.

Jackson concedes that he failed to object to this testimony during trial, and thus we will review this claim for plain error only. *State v. Herrera-Bustamante*, 304 Ga. 259, 263 (2) (b) (818 SE2d 552) (2018). To establish plain error,

> [t]here first must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *Ceballos v. State*, 345 Ga. App. 714, 719 (2) (a) (815 SE2d 89) (2018).

"Generally speaking, unless a witness's veracity has affirmatively been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's

credibility in the eyes of the jury." (Citation and punctuation omitted.) *Laster v. State*, 340 Ga. App. 96, 98 (1) (796 SE2d 484) (2017).

> The Child Hearsay Statute, however, is a legislatively created exception to the general rule prohibiting such hearsay evidence and provides that, so long as certain conditions are met, a statement made by a child describing any act of sexual contact is admissible in evidence by the person to whom the statement was made. As such, the Child Hearsay Statute actually contemplates testimony from both the child and those witnessing the child's later reaction, even if the hearsay may be bolstering.

(Citations and punctuation omitted.) Id. at 98-99 (1). "There have been several iterations of the Child Hearsay Statute." *Laster*, supra, 340 Ga. App. at 99 (1) n.2. OCGA § 24-3-16 (2011), which was in effect at the time of the March 2011 incident,[12] provided that:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the

---

[12] See Ga. L. 2013, p. 222, 243 § 21 ("Any offense occurring before July 1, 2013, shall be governed by the [Child Hearsay Statute] in effect at the time of such offense[.]")

court finds that the circumstances of the statement provide sufficient indicia of reliability.

In construing this statute, we have been clear that it "only applies to a statement made by a child under the age of 14 years." (Citation and punctuation omitted.) *Damerow v. State*, 310 Ga. App. 530, 536 (4) (a) (i) (714 SE2d 82) (2011). Moreover, "while the court must find that the circumstances of the statement provide sufficient indicia of reliability, such finding is not a condition precedent to the admissibility of the statement; rather, this statutory requirement is met if after both parties have rested, the record contains evidence which would support such a finding." (Punctuation and emphasis omitted.) *Gregg v. State*, 201 Ga. App. 238, 239 (3) (a) (411 SE2d 65) (1991).

> The factors which the court may consider, when applicable, include but are not limited to the following: (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's

24

statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.

(Emphasis omitted.) Id. at 240 (3) (b). And "if the record contains sufficient evidence of 'indicia of reliability,' we would not reverse the correct ruling of the trial court regardless of the reason given for or the timing of its ruling." Id. at 240 (3) (a).

OCGA § 24-8-820 (2014), which was in effect at the time of the May 2014 incident,[13] provided:

A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

---

[13] See Ga. L. 2013, p. 222, 237 § 13 (effective July 1, 2013).

With these principles in mind, we turn to the statements which Jackson contends were improperly admitted into evidence.

(a) *Outcry to N. S.* At trial, N. S. testified, among other things, that in Winter 2011, S. S. told her that she "lost her virginity" to Jackson. Jackson argues that N. S.'s outcry does not fall within OCGA § 24-3-16 because S. S. was 14 years old at the time of this outcry. But Jackson has not satisfied the second prong of the plain error test, namely, that the error was clear or obvious. First, the record does not definitively show S. S.'s age at the time of the outcry. S. S. testified that her birthday was "around" June 11, she was 12 years old at the time of the December 2010 incident, and she disclosed the incident to N. S. "a year or two " after the March 2011 incident. N. S., however, testified that S. S. made her outcry in 2011. In light of this timeline, it is possible that S. S. was only 13 years old at the time of her outcry to N. S, and thus Jackson cannot show that the admission of N. S.'s testimony under OCGA § 24-3-16 (2011) was a clear or obvious error. See *Carter v. State*, 317 Ga. 389, 394-395 (2) (895 SE2d 295) (2023) (admission of evidence was not a "clear and obvious [error] beyond reasonable dispute" because there was a "reasonable argument" based on the record that the evidence was admissible). Compare *Sullins v. State*, 347 Ga. App. 628, 632 (1)

26

(820 SE2d 468) (2018) (determining that it was plain error to admit the child's statements under OCGA § 24-8-820 because "*it[was]undisputed*" that the child was over the age of 16 when she made her outcry statements) (emphasis added).

Second, and contrary to Jackson's argument, the record contains competent evidence of indicia of reliability. Specifically, N. S. testified that S. S. made her outcry while they were having "girl talk" in Winter 2011. N. S. testified that S. S. was initially "scared" to tell her about the incident, and she was fearful that N. S. would not believer her. In light of the indicia of reliability of the outcry and the likelihood that S. S. was under the age of 14 at the time of the outcry, Jackson has failed to show that N. S.'s testimony was clearly or obviously inadmissible under OCGA § 24-3-16.

(b) *Outcry to M. B.* M. B. testified that at some point in 2013 or 2014, while sitting in chemistry class with S. S., another classmate started to talk about her problems, which caused S. S. to cry and tell them that "she had been raped by someone close to her." S. S. said that "[i]t was a family friend," and that she was afraid to tell her mother out of fear that it would ruin the connection between the families and the relationship between Jackson and his daughters. But Jackson has again failed to show a clear or obvious error that the outcry to M. B. was inadmissible under

OCGA § 24-8-820.[14] Although Jackson asserts that S. S. was 16 years old at the time

of this outcry, under the time-frame above, it is also likely that S. S. was 15 years old

when she made her outcry because M. B. testified that S. S. made her outcry in 2013

*or* 2014.

Moreover, although Jackson argues that the State failed to provide notice of M.

B.'s testimony under OCGA § 24-8-820, he still cannot establish a clear or obvious

error.

> [A]bsent a showing of prejudice to the defendant and bad faith by the
> State, the ordinary remedy for failure to comply with a requirement that
> a witness must be identified prior to trial is simply a continuance to allow
> for an interview of the witness, and we assume that the trial court would
> have followed the law if an objection to notice had been made.

*Grier v. State*, 313 Ga. 236, 242 (3) (b) (869 SE2d 423) (2022). Here, Jackson does not

even argue bad faith or prejudice in the State's failure to provide him notice of M. B.'s

---

[14] The outcry to M. B. was not admissible under OCGA § 24-3-16 because, as stated above, that statute applied to offenses that occurred before July 1, 2013 and it required that the child victim be under the age of 14 at the time of the outcry. Based on the timeline above, S. S. would have been 14 or 15 in 2013. And although Jackson argues that the outcry to M. B. could only have referenced the March 2011 incident, again, M. B. testified that the outcry occurred in 2013 or 2014. Thus, it is possible that S. S. made her outcry sometime after the May 2014 incident *but before* her 16th birthday on June 11, 2014.

testimony. "Because the exclusion of [M. B.]'s testimony about [S. S.]'s statement would not have been required had [Jackson]'s counsel objected to the lack of proper notice, [Jackson] has not satisfied his burden in showing clear error." *Grier*, supra, 313 Ga. at 243 (3) (b).

(c) *Outcries to S. S.'s Mother and the Forensic Interviewer*. At trial, the forensic interviewer testified that she conducted a forensic interview with S. S. on September 8, 2014, when S. S. was 16 years old, and she testified as to what S. S. told her about her encounters with Jackson. S. S.'s mother testified that S. S. told her about the sexual assaults in August 2014. Thus, as the State acknowledges, S. S. was 16 years old at the time that she made her outcries to her mother and the forensic interviewer, and thus their testimony was not admissible under OCGA § 24-8-820, which requires that the outcry be made by a child under the age of 16. See *Sullins*, supra, 347 Ga. App. at 632 (1) (child's outcry statements were not admissible under OCGA § 24-8-820 because the child was over the age of 16 when she made the outcry statements).[15]

---

[15] We note that the State does not argue that these outcry statements were admissible as prior consistent statements under OCGA § 24-6-13 (c), and so we do not address whether they would be admissible under that statute.

Nevertheless, Jackson still cannot prevail under the third prong of the plain error test, which requires him to show that the error affected the outcome of the trial court proceedings. *Ceballos*, supra, 345 Ga. App. at 719 (2) (a). Neither S. S.'s mother nor the forensic interviewer testified as to any additional details of S. S.'s statements that were not already contained in her own testimony as well as her outcry statements to N. S. and M. B. S. S.'s outcry statements to her mother and Boynes were therefore merely cumulative of her outcry statements to N. S. and M. B. as well as her own testimony. Because those outcry statements to N. S. and M. B. were properly allowed into evidence, Jackson cannot show that the error in the admission of the testimony of S. S.'s mother and the forensic interviewer affected the outcome of his trial. See *Grier*, supra, 313 Ga. at 245 (3) (f) ("Appellant has not met his burden under the plain error standard to show a reasonable probability that the outcome would have been different, as the improperly admitted hearsay was merely duplicative of other properly admitted evidence.").

7. Jackson further argues that the cumulative effect of the errors warrants a new trial. This claim also fails.

"Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors." (Citation omitted.) *Kirkland v. State*, 318 Ga. 639, 658 (7) (898 SE2d 536) (2024). "To establish cumulative error, Jackson must show that (1) *at least two errors* were committed in the course of the trial; and (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied Jackson a fundamentally fair trial." (Emphasis supplied.) *Jackson v. State*, 317 Ga. 95, 107 (4) (891 SE2d 866) (2023). Here, we found that the trial court erred by admitting into evidence the testimony of S. S. and the forensic interviewer, and we determined that Jackson could not show that the error affected the outcome of his trial because their testimony was duplicative of other evidence that was properly admitted at trial. In light of that conclusion, Jackson cannot show that the combined prejudicial effect of those errors requires a new trial. See *Jackson*, supra, 317 Ga. at 107 (4) (defendant's cumulative error claim failed because he could not show that the errors committed during his trial required a new trial).

8. Finally, Jackson argues that the trial court imposed an unlawful sentence by sentencing him for both statutory rape convictions. We agree.

31

It is a longstanding principle of Georgia law that a date or range of dates alleged in an indictment, without more, is not a material allegation of the indictment, and, consequently, unless the indictment specifically states that the alleged dates are material, the State may prove that the alleged crime was committed on any date within the statute of limitation. Thus, such an averment of materiality is necessary to overcome a plea of double jeopardy to a subsequent charge of committing the same act on a separate date.

(Citation and punctuation omitted.) *Thomas v. State*, 352 Ga. App. 640, 642 (1) (a) (835 SE2d 640) (2019). "To make such dates a material allegation, the indictment must specifically allege that the date of the offense is material." (Punctuation omitted.) Id. Therefore, "the mere fact that a different date is charged in each count will not of itself make the indictment into a special one where the averment as to date is not particularized." (Citation and punctuation omitted.) Id.

Here, Counts 1 and 3 alleged that on or about March 21, 2011 and May 14, 2014, Jackson committed statutory rape in that he "did engage in sexual intercourse with [S. S.], a person under 16 years of age and not being the spouse of the accused[.]" Hence, Count 1 and Count 3 are identical except for the dates of the offenses, and the State did not allege in the indictment that the dates were material. Thus, the State was

authorized to prove either count based on any incident occurring within the statute of limitation. Consequently, because the language in the indictments allowed the jury to find Jackson guilty of both statutory rape counts based on facts related to either incident, the trial court erred by not merging Counts 1 and 3. See *Townsend v. State*, 357 Ga. App. 111, 115-116 (1) (b) (848 SE2d 210) (2020) (trial court erred by failing to merge three convictions of theft by taking where the language in the indictments did not allege that the dates were material). And because the trial court imposed a separate sentence on each count to be served consecutively, "we must vacate the sentences and remand with instructions to merge the [two statutory rape] offenses and resentence [Jackson] for only one [statutory rape] conviction[.]" Id. at 117 (1) (b).

Accordingly, for the reasons stated above, we vacate Jackson's sentence, and we remand the case to the trial court to merge the statutory rape convictions and resentence Jackson for only one statutory rape conviction. We otherwise affirm the denial of Jackson's motion for new trial.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Doyle, P. J., and Gobeil, J., concur.*